By the Court,

Nelson, Ch. J.
This case has heretofore been before the court upon demurrer (11 Wendell, 100), and if the opinion then expressed in respect to the legal operation and effect of the covenant upon which the suit is brought was correct, there is scarcely any thing left upon this record for decision beyond several exceptions raised in the progress of the trial, *66 which do not involve the merits. We then decided that legal proceedings against 0. Phelps, for the purpose of obtaining recompense provided for in the deed, were not a condition precedent to the liability of the defendant; [112] and it was then observed that in all the cases bearing upon the question in which such proceedings were deemed necessary, the very terms of the covenant either provided, or necessarily implied that the liability of the guarantor should depend upon the failure to obtain payment after proceedings had against the principal; and that where this was not the condition of the liability, either in terms or by legal inference, a suit was never necessary. The several authorities to support this doctrine were then referred to, and are believed to be conclusive upon the point.
A demand of recompense from Phelps, and notice of neglect or refusal to the defendant before suit, or some legal excuse for the omission, should be shown. Where the defendant guarantees the payment of a sum of money on a particular day or fixed time, it has frequently been held, that a demand and notice are unnecessary. The undertaking is then absolute and certain, and the liability arises immediately upon the default of the principal (20 Johns. B. 365). Here, however, the liability'of the defendant to pay, depended upon the happening of contingencies namely, the discovery that the title to the lot had failed, and the inability of the plaintiff to obtain recompense of Phelps. These were uncertain and a reasonable construction of the covenant required notice to the defendant before he could be considered in default. All, then, that was material to be proved on the trial, to authorize a recovery upon legal principles, unembarrassed with pleadings and technical objections, were the execution of the covenant; the discovery of the defect of the title of Phelps to the lot; demand of recompense and failure to obtain it in a reasonable time, or an excuse for the omission, and notice to tne defendant. From the numerous issues and objections taken at the trial, it becomes necessary to look into the pleadings and evidence, to see ii these facts have been properly established.
The execution of the deed containing the covenant was proved by the acknowledgment of the defendant before a proper officer in due form. This was objected to as not sufficient proof under the plea of non eit factum [113] of the execution of the personal covenant contained in the deed. The statute provides (1 R. S. 759, § 16), that every conveyance acknowledged, &c., “ may be read in evidence without further proof thereof;” this is confessedly sufficient proof of the execution of the deed for the principal purpose, namely, to show a transfer of title, it seems a natural consequence that it must be sufficient to prove the covenants which are merely incidental. Our acknowledgment of deeds is derived from the practice in levying a fine of acknowledging the concord or agreement, which is the material part of it, before the judges or commissioners duly authorized for that purpose; and which is conclusive upon the deforciant (3 Cruise, 34, 94; 12 Rep. 124; 10 id. 42, 3). For this reason it was supposed by the counsel in Jackson v. Schoonmaker (4 Johns. R. 161), that an acknowledgment under our statute was conclusive, it being in the nature of a judicial act. The chirograph of a fine is evidence in all courts of the contents (Bull. N. P. 229; 3 Cruise, 31); and as a warranty of the title is usually embraced in the concord, it is of course proved by this record. It was further objected that there was a variance in the description of the date of the deed, 17th instead of the 20th August. The cases of Lion v. Burtis (18 Johns. R. 540, and Kimball v. Huntington, 7 Wendell, 472), are decisive to sustain the judge in disregarding this variance, as a mere clerical error. . So is the statute (2 R. S. 406, §79; see also 9 Wendell, 311). The plaintiff may amend.
The charge of the judge was substantially correct, in respect to the issues *67 upon the pleas of payment. The counsel for the defendant rested the proof of the truth of them upon the presumption arising from lapse of time since the breach of the covenant. This is not a statute bar, and any facts and circumstances tending to rebut the presumption, are admissible for the consideration of the jury (10 Johns. R. 417; 16 id. 310). The testimony of Greig strongly repelled any such presumption; he was not particular as to the time when he held the several conversations with the defendant detailed by him, but the jury were warranted in the conclusion that [114] some of them were within the twenty years, in which he virtually admitted the non-payment of the claim.
The issues upon the 4th, 5th, 6th, 7th and 8th pleas were substantially the same; presenting the question, whether it was found at any time since, that Phelps had no title to lot No. 47, when he conveyed it to the plaintiff, in February, 1794. The verbiage of the different pleas vary, and there is an apparent attempt to make time a material fact in some of the issues, but I think without success. The words of the covenant as laid are, “ that in case it should thereafter appear that the title of the said lot was not vested in the said Oliver Phelps, at the time of his conveying as aforesaid, to the said Thomas, and a recompense for the same could not be obtained from the said Phélps, in a reasonable time after the title thereto should be found defective, then,” &c. The breach alleged that Phelps had no title at the time of the conveyance; and that afterwards, to wit, on the 1st July, 1806, this fact was found and ascertained, &c.: in other words, or in substance, that it did afterwards appear, or was discovered that Phelps had no title to the lot, Sec. The declaration, says Mr. Chitty (1 Chilty, 257), “ must in general state a time when every material and traversable fact happened; the precise time, however, is not material, even in criminal cases, unless it constitute a material part of the contract declared upon, or where the date of a written contract or record is averred.” Here time was not material, and seems- to have been so understood by the draftsman of the pleas; for he does not venture an issue upon the precise day laid in the declaration, but says that it was not found, &c., on the 1st July, 1806, or 1st July, 1807, or at any other time, &c. The charge of the judge, therefore, on this part of the case, I think unexceptionable. The title of Phelps, was unquestionably defective, as proved by the documentary evidence.
As to the insolvency and inability of Phelps to make recompense. The several issues upon this point present substantially the question, whether Phelps was insolvent and wholly unable to make recompense for the failure of the title to the lot, at the time the defect was ascertained, or since. Upon these issues, the judge charged the jury to inquire whether [115] Phelps was insolvent on the 1st July, 1807, and continued so till his death; and that their inquiries were to be confined to that time. He was requested by the counsel for the defendant to instruct the jury, that inasmuch as the declaration averred that it was ascertained on the 1st July, 1807, that Phelps’s title had failed, if they were satisfied that the fact had been ascertained before that time, then the defendant was entitled to their verdict on these issues; which was refused. This request must have been made upon the assumption that time in the above averment was material, and the plaintiff confined to it, which we have endeavored to show incorrect, and is a full answer, to the request; or perhaps upon the assumption that, as the judge had confined the question of insolvency to the 1st July and subsequent, if it could be shown that the defect of title had been ascertained before that day, then for aught that would appear to the contrary Phelps was then solvent and able to pay. The judge, I think, erred in limiting the inquiry of the jury upon these issues to the particular day, it being immaterial; but it Would have been equally erroneous to have adopted the suggestion of the *68 counsel. The true question upon the whole record in respect to this part of the case, was, whether Phelps was insolvent and unable to pay at the time and since the defect of title was discovered. The averment in both counts of the declaration is, that at the time it was found that the title was defective, the said Oliver Phelps was wholly insolvent, and unable to make recompense, and continued so insolvent, &c. Now. disregarding time as immaterial, the pleas are substantially a negative of this allegation in the declaration in its broadest aspect. Indeed, all of the pleas of insolvency and inability, in terms negative the averment, without regard to any particular day. They deny the insolvency, &c., at and after the time it was ascertained the title of Phelps was defective, be that when it may. The request, theiefore, should have been to instruct the jury accordingly. Upon the facts, however, it is obvious the instruction could not have been prejudicial to the rights of the defendant, as there can be no reasonable doubt but that [116] Phelps was insolvent at the time the title was discovered to be defective.
As to notice: The judge charged that notice was necessary, and we do not perceive that any objection was taken to this part of the direction given to the j ary.
As to the measure of damages: There is some ground for contending that the damages should be limited to the amount which the plaintiff could legally have recovered of Phelps, as the remedies are in the alternative for the same injury; that would have been one-half the consideration money paid to Phelps and the interest thereof; but from an attentive examination of the terms and import of the covenant, I am inclined to think the instruction at the trial correct. It appears from the recitals in the deed, that the parties had been tenants in common in several parcels of land, and that in the partition thereof the defendant received other lands in lieu of the moiety of lot No. 47, released to the plaintiff. It is fair, therefore, to presume that the partition was made upon an appraised or estimated value of the several parcels of land at the time, and that the plaintiff had given a full equivalent for the moiety of this lot at the time of the execution of the release and covenant. When, therefore, the defendant covenanted that on a failure to obtain a recompense of Phelps, he “ would pay to the said Thomas the value of one half of the said lot,” the parties intended, what the words clearly and legally import, one half the v lue of the premises at the time of the execution of the deed which contained this covenant. This is the natural meaning of the language used, and the reasonable and just interpretation under the recitals in the deed.
The interest would commence upon notice to the plaintiff of the inability or default of Phelps. The time when this was given was left doubtful by the evidence, but it was a question of fact for the jury. The charge of the jury was substantially in conformity to this view.
Some exceptions were taken to the decisions of the judge in respect to the admissibility of evidence, which it is proper to notice. 1. As to the conversations of Greig with the defendant in respect to the failure of the [117] title of Phelps. It was difficult, if not impossible to prove by these conversations, notice of the failure of title and inability to procure recompense, which was the material point of the inquiry, without incidentally alluding to the title. If the plaintiff had first produced the documentary evidence of the fact of failure, which would have been more orderly, there could not have been a pretence for the exception. The part of the conversation, however, relating to the failure of title, was disavowed, in the hearing of the jury, as evidence of the fact. The conversations were admissible for the purpose offered, and the plaintiff was entitled to the benefit of them. Besides, tile documentary proof was afte; wards introduced, and exclusively relied on, as evidence of the failure of title, and which abundantly proved it
*69 2. Several exceptions were taken to the proof of the insolvency of Phelps, but all of tlurn are so clearly untenable, it will not be important to notice them. All the evidence fairly tended to establish the fact.
3. Greig was objected to as an interested witness, on the ground that he had retained and stood responsible to the attorneys of the plaintiff .for their costs. They were retained by him as- the agent of Morris, and he had not made himself personally responsible. He was therefore a competent witness.
4. The conversations of this witness with the defendant were also objected to, on the ground that they occurred during a negotiation to settle the claim in controversy. It is apparent from his testimony, that by settlement the witness meant merely an effort to obtain payment of the claim. There was no attempt to compromise on the part of the defendant; he refused to pay anything.
5. The counsel for the plaintiff having established a prima facie case of failure of title by documentary evidence, the defendant countervailed it by tracing title in Phelps from the original source of title. This made it necessary for the plaintiff to displace the title thus proved; which was done. I lay out of the case the deed to B. Morris, and the questions growing out of it as unimportant, after the deed to Benton was introduced. [118] The counsel for the defendant objected to the evidence offered to displace the title, on the ground that the plaintiff was bound in the orderly course of the trial to introduce all his proof of failure of title in the first instance, and, several authorities were referred to in support of the objection, viz: 2 Bos. & Pul. 332; 3 Com. L. R. 230; 12 id 297; 24 id. 330; Chitty’s Gen. Pr. 909. The practice in England is not uniform upon this subject, and depends very much upon the exercise of the discretion of the judge at nisi prius, as may be seen by a reference to the following authorities: 16 Com. L. 436; 22 id. 256, and note; 21 id. 386, 431, and note; 2 id. 462; 1 Ry. & Mood. 255; 1 Starkie’s Ed. 365, 6, 7, Phil. ed. The course- of the trial there influences in some measure, the opinion of the judges. The counsel for the plaintiff opens his case at large, commenting upon the facts he expects to prove. After the plaintiff’s evidence closes, the counsel for the defendant opens at large the defence, commenting upon the plaintiff’s case, as well as upon the testimony he expects to produce; and then a general reply closes the case. If the defendant produce no evidence, except what is drawn out on the cross-examination, no reply is admitted. Where the plaintiff produces fresh evidence in contradiction of some facts proved by the defendant’s witnesses, the counsel for the defendant, it seems, is then entitled to comment upon it, not having had an opportunity to do so in his opening. It is apparent, from this course of practice, the time consumed in the trial may often be shortened by compelling the plaintiff, in. the first instance, to spread out his whole case; every thing that by possibility may become necessary, so as to save the comments in reply of the defendant’s counsel. This or some other reason induced Lord EUenborough, at the circuit, to go the unreasonable length of requiring the counsel for the plaintiff to include in his opening the facts in reply to any distinct answer to the action, which appeared on the record by way of plea or notice, without waiting to see whether such defence could be proved or not. There is certainly a proper order in which the evidence should be produced on the trial, and which the pleadings and nature of the controversy will readily indicate to the presiding judge; and if [119] this should be violated, and the rights of the party suffer by reason thereof, this court would no doubt interfere, but the question must always depend so much upon the exercise of a sound discretion, that it would be unsafe to lay down any general rule, for the disobedience of which an exception should be allowed. We have frequently seen trials at the circuit very much shortened by a departure from what might strictly be deemed the *70 natural order of the evidence, without injustice or the sugestión of injustice to either party. The ruling in this case, I have no doubt, was in conformity to the uniform practice at trials under like circumstances.
Upon the whole, after a careful and patient examination of the numerous points and questions in the case, we are of opinion a new trial must be denied.
New trial denied.