## *Thurman *vs.* Cameron. [ *87 ]

A *deed* obtained by the grantee of lands in the *actual possession of another,* held adversely to the title of the grantor, is void, although the title under which the party in possession holds is bad.

A *certificate* made by statute evidence of certain facts, requires no proof of its genuineness, where on its face it appears to be regular. Thus, the certificate of the acknowledgment of a deed is received without proof of the *official character* of the officer granting it, of his *signature,* or that it was granted *within the jurisdiction* where he is authorized to act. The evidence, however, is only *prima facie,* and may be rebutted.

It is not necessary that a certificate of acknowledgment should be *endorsed* on the deed ; it is enough if it be on any part of it.

Nor is it necessary that the officer should certify that he knew the person making the acknowledgment to be the grantor *described* in the deed, if he state that he knew him to be the person who *executed* it.

Where, on the trial of an ejectment, a verdict is entered for the plaintiff, with leave to the defendant to move to set it aside, on the motion for a new trial the defendant is not allowed to object that the plaintiff *failed to show title in himself,* if such objection was not raised at the trial.

This was an action of *ejectment,* tried at the Warren circuit, in June, 1835, before the Hon. Esek Cowen, then one of the circuit judges.

The plaintiff claimed to recover lot No. 5, in the subdivision of lot No. 54, of a tract of land called *Hyde patent.* The declaration contained but one count in the name of the plaintiff. He produced a deed from George Hooker and Richard A. Ives, of the state of Connecticut, to Charles G. Ives, bearing date 26th September, 1827, conveying the premises in question. At *the foot* of the conveyance and *not endorsed* on the back thereof, was a certificate of acknowledgment of its execution by the grantors, purporting to have been granted by " David Daggett, a judge of the superior court of the state of Connecticut." It commenced thus : " State of Connecticut, ss. Hartford, September 26th, 1827," and then proceeded to state that on that day George Hooker and Richard A. Ives, well known to him to be the persons who executed the foregoing instrument, appeared before him and acknowledged the same to be their act and deed.

The counsel for the defendant objected to the deed *being re- [ *88 ] ceived in evidence, on the grounds : 1. That the certificate was not *endorsed* on the deed ; 2. Because there was no evidence of the *official character* or of the *signature* of the officer whose name purported to be subscribed to it, or that the acknowledgments were taken *within the jurisdiction* of the superior court of Connecticut ; and 3. That the certificate was defective in not stating that the officer knew or had satisfactory evidence that the individuals making the acknowledgment were the persons *described in the conveyance.* The judge ruled that the certificate was *per se* evidence of the *official character* and *signature* of the officer, and received the deed

in evidence.   The plaintiff then produced in evidence a deed from Charles G. Ives to Asahel Hooker, dated 28th March, 1828, a deed from Asahel Hooker to Gaylord Wells, dated 29th March, 1828, and a deed from Gaylord Wells to *John Thurman,* the plaintiff in this cause, bearing date 20th August, 1834—all of the premises in question.   The last deed contained a clause in these words :  *It being understood that the said party of the second part is to answer or pay all claims or charges which may hereafter be incurred in obtaining possession of the premises.*   There were objections to the validity of the *certificates* of acknowledgment on some of the latter deeds similar to those taken in respect to the certificate on the deed first offered.   The plaintiff proved that in 1826, the defendant was in possession of a *part* of the premises in question, and at the time of the trial was, and for some before had been, in possession of the whole lot, claiming to have got his title from Judge Baldwin, as *somebody's agent.*   The plaintiff also produced in evidence a paper bearing date 25th October, 1826, subscribed by *Seth C. Baldwin, jr. agent for Hooker & Ives,* and by B. V. Benthuysen, agent for John Williams, requesting a surveyor to make a division of lot No. 5, between their principals, assigning to *Hooker & Ives* 310 acres, and to Williams 190 acres.

The defendant proved that he was in possession of portions of the premises under *quit claim deeds* since the year 1820, obtained by him [ *89 ]   from persons previously in possession, *and that on the 14th July, 1828, he obtained a deed from *Seth C. Baldwin, junior,* conveying *in fee* the premises in question ; in which deed, after describing the premises conveyed, there is a clause that the grantor conveys as well his own interest and right, as the *interest and right of George Hooker and Richard A. Ives, for whom the grantor is* (as he alleges) *the duly appointed agent and attorney.*   Hooker and Ives are not, however, described in the deed as the grantors, and the deed is executed thus :  Seth **C.** Baldwin, L. S.   It was proved by the surveyor, that in 1826, the defendant was in possession of part of lot No. 5 ; that he had at that time about 50 acres under cultivation, a house and out buildings ; that he resided on the premises, and has ever since continued to reside there ; that on the 20th August, 1834, he was in possession of the premises, exercising acts of ownership over the same.   The surveyor further testified, that soon after the plaintiff's return from Connecticut, in August, 1834, the plaintiff informed him that he had bought the whole of the Cameron farm ; that he had seen Cameron's title on the records, that Baldwin was only an agent, and had given the deed *in his own name,* that the deed was not good for any thing, and he the plaintiff had as good right to buy as any one.   The judge intimated his opinion that the plaintiff could not recover, because at the time of obtaining his deed the defendant was in the actual possession of the premises, claiming under a title

adverse to that of the plaintiff's grantor, but concluded to permit the plaintiff to take a verdict, *with leave* to the defendant to move to set it aside. A verdict for the plaintiff was accordingly entered, which the defendant now moves to set aside. On the argument of the cause, the defendant by consent of the plaintiff, produced in court a *power of attorney* from *George Hooker and Richard A. Ives* to *Seth C. Baldwin*, executed on the 4th July, 1825, authorizing him *in his own name*, or in their names, to *sell* the premises in question, and engaging to *ratify* and *confirm* whatsoever he should lawfully do in the premises.

*W. Hay*, for the defendant. [ *90 ]

*S. Stevens*, for the plaintiff.

*By the Court*, COWEN, J. There being no count in the declaration except on the plaintiff's title, he was bound to show a valid deed to himself. He claimed under Gaylord Wells, by deed dated in August, 1834, who claimed under George Hooker and Richard A. Ives by sundry mesne conveyances. They had in 1825 authorized Mr. Baldwin to convey, but had revoked that power in 1827, by themselves then giving a deed to Charles G. Ives, from whom the paper title came to the plaintiff, if he had any. Yet Mr. Baldwin conveyed to the defendant in 1828. This deed was unavailable, as passing any title, for two reasons : 1. Hooker & Ives, as we have seen, had before conveyed ; and 2. If they had not, the deed was null, as being or purporting to be in Mr. Baldwin's own name and right. This latter was so, notwithstanding the letter of attorney to him declared that he might convey in his *own name*, or in the name of his principals. The parties could not thus change the established forms of conveyancing. The attorney is bound to use the name of his principal both in the body of the deed, and by way of signature, and for and in the name of his principal to affix the proper seal. If he make the deed in his own name, it is his own personal contract, and cannot operate as against his principal for any purpose. *Storey on Agency*, 137 *et seq., ed. of* 1839.

The defendant then, I think, must be taken in every sense as having a possession, and claiming under the independent deed of Mr. Baldwin so early as 1828. That possession was actually adverse as to part, and constructively for the residue. The defendant had for several years cultivated the premises in question as owner, making considerable improvements. All this was public, notorious, and well known to the plaintiff in 1834, when he took his deed from Wells ; and that deed was taken with the express view to this litigation. It was therefore clearly void, as being both against the letter and spirit of the law to prevent maintenance, *un- [ *91 ]

less the adverse character of the possession was destroyed or qualified by the defendant's decl aration that Mr. Baldwin, when he conveyed, or contracted to convey, acted as the agent of Hooker & Ives. This, it is supposed, operated as a recognition of their title; and that the defendant, in effect, must be taken as claiming under them at sufferance, because the conveyance from their attorney, which he believed to be valid, was void. I have supposed the defendant's acknowledgment to have been direct that he took under Mr. Baldwin as the attorney or agent of Hooker & Ives, for the jury might possibly have considered the defendant's declaration to Woodward as referring to them. Mr. Baldwin probably had no authority except from them. Yet I do not see how this is to detract from the adverse character of the defendant's possession. He took a deed, believing that he got a good title, either from Mr. Baldwin, from Hooker & Ives, or both, and under it held a possession actually adverse. Neither Mr. Baldwin nor Hooker & Ives had any title. It had passed to Charles G. Ives. But this was not known to the defendant, and he was in under such color of title as led to a belief of his right. He acted accordingly. It was not necessary, in order to create an adverse possession, that he should have a legal title. Suppose he had taken a deed from Hooker & Ives in person, clearly his possession would have been adverse, though their deed would have been void; and can the possession be considered less, because the deed came from their agent? Would not the possession which followed, running twenty-five years, have matured into a title? Mr. Baldwin's deed covered the whole lot, and the defendant was in actual possession of all the cultivated portion. His possession was clearly constructive in respect to the residue, according to all the cases decided by this court.

The certificates of acknowledgment were, we think, properly received in evidence. The objections to them, if all allowed, would destroy almost entirely the utility of the statutes, which declare a probate or certificate of acknowledgment endorsed by certain officers upon a deed, to be *prima facie* evidence of its execution. If their official character, their signatures, and that they acted within their territorial jurisdiction must be shown by extrinsic evidence, the party may as well, and in general perhaps with more convenience to himself, procure the common law proof. The practice is to take a certificate which appears on its face to be in conformity with the statutes, as proof of its own genuineness. It need only be produced. There is no need of extrinsic proof, such as showing by whom it was made, any more than of a notary's certificate when received under the commercial or civil law, *Chitty on Bills*, Am. ed. 1839, *p.* 642. *a; 2 Dom. tit.* 1, § 1, *pl.* 29; or a clerk's certified rule of the court in which the cause is pending. *Cowen & Hill's* 1 *Phil. Ev.* 388. Accordingly, where the certificate describes the proper officer, acting in the proper

[ *92 ]

place, it is taken as proof both of his character and local jurisdiction. *Rhoades' lessee* v. *Selin*, 4 *Wash. C. C. R.* 718. *Willink's lessee* v. *Miles*, 1 *Pet. C. C. R.* 429. *Vid. Morris* v. *Wadsworth*, 17 *Wendell*, 103, 112, 113. He is like an officer authorized to take testimony *de bene esse* under various statutes. *Vid. Ruggles* v. *Bucknor*, 1 *Paine's C. C. R.* 358, 362. Thompson J. there said, *prima facie* the officer is to be presumed, *de facto* and *de jure*, such as he is described to be. Indeed the certificate stands much on the same ground as the return to a special commission for taking testimony. There it would be deemed a singular objection, that the commissioners must be identified and shown to have proceeded regularly, by evidence collateral to the return.¹

The certificates purport to be taken at the place where the officers had power to act. That they acted within their territorial jurisdiction is therefore proved, even if it were not to be presumed without the fact being stated. The cases holding that certificates may be impeached because the act was done out of such jurisdiction, are those where the presumption was overturned, or offered to be, by collateral proof. *Jackson, ex dem. Walsh* v. *Colden*, 4 *Cowen*, 266, 278. *Jackson ex dem. Wyckoff*, v. *Humphrey*, 1 *Johns. R.* 498. Certificates of this character are not treated by the statutes as more than *prima facie* evidence ; nor are they more either *in respect to their own regularity or the facts which they are ad-    [ *93 ] duced to prove. They are open to attack in a great variety of ways. *Vid. Cowen & Hill's Notes to* 1 *Phil.* 1249, 1250. They are, however, by recent statutes, made receivable to authenticate almost every kind of instrument ; and to consider them less than *prima facie* evidence, *per se*, would render them literally useless, especially in those local jurisdictions where they are of most importance.

Although the statutes in terms required that these certificates should be endorsed, 1 *R. S.* 748, 2*d ed.* § 15, 1 *R. L. of* 1813, 369, § 1, they need not be followed according to the local import of the word. A certificate subjoined and expressing the same things *mutatis mutandis* as if endorsed, has the same effect, and may even be described in an indictment as an endorsement. *Rex* v. *Bigg*, 1 *Str.* 18. Being on the same sheet with the deed, there is no more chance for committing a fraud, than by an endorsement in form. A certificate thus subjoined passed without objection in *Jackson, ex dem. Merritt*, v. *Gumaer*, 2 *Cowen*, 532. This case also held that the certificate saying " A. B., to me known, came before me, one, &c, and acknowledged," &c. A. B. being in truth the name of the grantor, though the certificate omitted to say so, was a sufficient compliance with that part of the statute requiring the officer to state that the person named was well known, &c. to be the person described in and who executed, &c. This is

even more than an answer to the objection now taken, in respect to the officer's certificates of knowledge.

Some of the points now made were not mentioned at the trial. Such is the objection that the deed from Hooker & Ives was void as a *trust deed* within the 1 *R. L. of* 1813, 75, § 1 ; and again, that no title was shown in them. It seems to have been assumed, on the trial, by both parties, that they once had title.

The effect of recording the deed from Asahel Hooker to Gaylord Wells before Mr. Baldwin executed the deed to the defendant, was not mooted at the trial, nor am I aware how it could vary the case if it had been. [ *94 ] *But a new trial must be granted, on the ground that the immediate deed to the plaintiff was void by reason of the defeadant's adverse possession at the time.

New trial granted.