## COLLIER *vs.* IDLEY'S EXECUTORS.

*In the matter of the Will of* ELIZABETH IDLEY, *deceased.*

WHEN, after the admission of a will of personal property to probate, allegations against the validity of the will and the competency of its proof, have been filed by any of the next of kin, within one year after such probate, it is not sufficient for the executors or legatees, in the first instance, in answer to the citation to " show cause why the probate of the will should not be revoked," to present the probate of the will as *prima facie* evidence of its validity.

Though the probate is, generally, conclusive as to the validity of the will, it is of no force in a proceeding instituted directly to impeach the probate itself.

If the allegations are sufficiently broad to question the validity of the will, and the competency of the proof, the executors or parties interested against the allegations, must prove the will *de novo*, by original proof; and none of the depositions taken on the first proof, can be received in evidence, except in the precise cases pointed out by the statute.

R. M. HARRINGTON, *for Contestant.*
JOHN COCHRAN *and* T. J. GLOVER, *for Executors.*

THE SURROGATE. This will was proved before the Surrogate of New-York, July 8, 1848, and allegations were filed within the year, against its validity and the compe-

tency of its proof, by one of the next of kin of the deceased. (2 *R. S.*, 3*d ed.*, *p.* 122, § 23.) These allegations are sufficiently broad and comprehensive, to contest the will and its probate on every material point.

A citation having issued to the executors and legatees, to appear and " show cause why the probate of the will should not be revoked ;" it is now my duty at the time appointed, " to proceed to hear the proofs of the parties." The executors claim, that in answer to the order to show cause, it is sufficient to present the probate of the will as *prima facie* evidence of its validity, and that the affirmative, or the *onus* of sustaining the allegations against the will and the competency of its proof, is with the contestants. At the first blush, this position may appear plausible, but to form a correct judgment, it is necessary to inquire into the nature and object of the present proceeding. Previous to the adoption of the sections in the Revised Statutes, which authorize the form of procedure in question, wills were proved before the Surrogate, *ex parte*, or in what was called the *Common Form*. (1 *R. S.*, *p.* 444.) It was only in cases where a *caveat* was entered or objection was made, that the Surrogate was compelled by law to cite the parties in interest, and thus to pursue a mode of probate analogous to the English *Solemn Form*. (1 *R. L.*, *p.* 446, § 9.)

Under the English practice, there are two modes of proving wills of personalty,—the *Common Form*, in which the will is propounded by the executor and proved *ex parte*, under such prudential regulations against abuses as may be adopted by the Court,—and the *Solemn Form*, in which all the next of kin of the testator are cited to see the proceedings, and the proof is taken "*per testes*," or " in form of law," as it is called. Probate in *Solemn Form*, is for ever binding on all the next of kin duly cited, unless fraud or collusion are practised (*Bell* vs. *Armstrong*, 1 *Addams*, 365) ; and it is also conclusive on next of kin, who though not cited, were conusant of the first probate and con-

tested it. (*Newell* vs. *King*, 2 *Phill.*, 225.) But probate in *Common Form*, may be called in by any of the next of kin, and the executor be cited to bring it in, and show cause why it should not be revoked; next of kin being entitled to proof *per testes*, of common right,—neither lapse of time, nor the receipt of a legacy under the will, nor acquiescence in the first proof, being sufficient to debar them from this privilege. (*Merryweather* vs. *Turner*, 3 *Curteis*, 802; *Gibson* vs. *Lane*, 9 *Yerger*, 475; *Brown* vs. *Gibson*, 1 *Nott & McCord*, 326; 3 *Curteis*, 553, 3 *Add.*, 257.) The Court, in the exercise of the power which it possesses over its own judgments, on the application of a party in interest, calls in its probate and the authority conferred by virtue of its decree on the executor, and requires proof in form of law.

Though the practice of proving wills in common form has prevailed in other portions of the United States (4 *New Hamp. R.*, 406; 1 *N. & M.*, 326; *Const. R.*, 505; 1 *Hare & McH.*, 162); and though it was customary in the State of New-York, previous to the revision of the statutes, to prove wills of personalty in that manner, still, it was not usual to require a new proof of the will in solemn form, on the demand of the next of kin. And yet the probate was conclusive. To remedy this difficulty, the first step was to provide for notice to the next of kin on the original proof of the will. (2 *R. S., p.* 60, § 24.) This provision was new, though some Surrogates were at that time in the habit of issuing such citations. Still, personal service of the citation was requisite, only on those who could be served in the county of the Surrogate, and next of kin not personally served, might be cut off by constructive notice by advertisement. To meet this case, the Revisers reported to the Legislature a series of provisions, designed to allow proof of the will in solemn form at the call of any of the next of kin, *upon whom a citation to attend the probate had not been personally served.* (See *Original Section*, § 36.) For this purpose, allegations were to be filed, and the English

practice was then to be pursued with several important improvements and modifications.

1. Proof in solemn form might be demanded in England at any time within thirty years. The Revisers proposed to limit the right here, to the period of one year.

2. By the English practice, the probate was called in, and the effect of this was to suspend the authority of the executors. The 33d § modified this, so as to leave the executors power to collect and recover moneys, and pay debts. The executors were not, therefore, ordered " to bring in the probate and show cause, &c.," but only to " show cause why the probate should not be revoked ;" the probate being left in their hands with narrower powers.

3. In consonance with the English system, the right to file allegations was to be confined to those, who had not been personally cited to attend the first proof.

That such was the design of these new provisions, is sufficiently manifest from the Revisers' Note to the original sections, from 32 to 48, which I quote at length, as a portion of their report to the Legislature, illustrative of the intention of the statute. They say, " The preceding sections are new, they are prepared in order to provide for a case which may often occur, and for which it is at least questionable, whether there is any provision by the existing law. The notice previous to proving a will is necessarily short, and must often be inadequate to apprise all the parties interested, and yet it would seem, that when once admitted to proof, the probate is perfectly conclusive." (Vide *Philips' Evidence,* 1 *vol. p.* 245.) " In England, a practice prevails in the Ecclesiastical Courts, of permitting a second and more solemn proof, by the citation of the parties at the instance of a relative. (2 *Phill.,* 224.) But there it has the effect of suspending all the proceedings of the executors, a result much to be deprecated. We have adopted that practice with many modifications fitted to our station, and we propose to limit the time for a re-examination, so as not to interfere with the payment of legacies,

which cannot be required until one year after probate. In the case of a will of real estate, the proof is not so conclusive as of personal property, but the heir may contest it, in a suit at law. The reason would seem equally to apply to a will of personal estate, so far as to provide some summary mode by which he may contest it." (*Rev. Notes*, 3 *R. S.*, *p.* 630, 2d ed.)

It is evident that the statute, as reported to the Legislature, was an adoption of the system of proof in Solemn Form, in the case of such of the next of kin as had not been cited. Now, the course, in that form of proceeding, has always been to put the executor on the proof *de novo*, to treat the first probate as a nullity, and make the executor prefer the will anew. The next of kin simply ask, demand, " *call* for the proof in solemn form," and the executor is bound to produce it, the *onus* of establishing the will being on him. This rule is, of course, eminently proper, where the party demanding a second proof, was not cited on the first proof. But the Legislature determined to make the statute much broader, and while they retained all the features of the English practice, as reported by the Revisers, they extended the benefit of the statute to all the next of kin, whether they had been regularly cited on the original probate or not, the clause limiting the right to file allegations to those who had *not* been personally cited, being stricken out, and the section enacted as it now stands.

That it was intended the whole evidence should be taken anew, appears from the 28th section, which provides that " the depositions of witnesses taken on the *first proof* of the will, who may be dead, insane, or out of the State, may be received in evidence." This, necessarily implies, that it is only *such* depositions that can be received on the second hearing, and no other. Besides, if the Legislature designed to give a substantial opportunity of contesting the will, we must of necessity suppose, that the contestants are not bound to call the witnesses to the will, when, per-

haps, their only hope of sustaining the invalidity of the instrument may depend upon impeaching or contradicting the testimony of those very witnesses. If, therefore, the depositions on the first proof, can be given in evidence, the entire object of the contestants may be defeated. But it is contended, that in answer to the order to show cause why the probate should not be revoked, it is sufficient for the executor in the first instance, to give in evidence the probate of the will. But the probate is the very thing that is questioned. True, the 21st section declares, that the probate "shall be conclusive evidence of the validity of such will" until revoked; but this is only a declaratory enactment of the Common Law. (See *Revisers' Notes to orig. Section* 35; *and* 1 *Philips' Ev.*, 245.) It never has been pretended in the Ecclesiastical Courts, that because a probate is conclusive of the validity of the will until revoked, this rule is applicable to a proceeding instituted directly to impeach the probate. The allegations are filed to procure a "re-examination," the proofs are all to be taken *de novo*, under a form of procedure expressly established for the purpose of allowing any party in interest to contest the will, and it would certainly be remarkable, at the very first stage of this process, to receive the probate in evidence, and thus stop the inquiry at the threshold. By Common Law and by statute, the probate is conclusive; and the argument for its reception proves too much, for it would be a monstrous absurdity, in a proceeding designed to afford an opportunity to set aside a judicial determination, to take as a conclusive answer, the very judgment sought to be set aside. This would make the whole procedure a simple nullity, an abortive device to impeach a decree of probate which cannot be impeached.

I cannot entertain any doubt, therefore, where the allegations are sufficiently broad to assail the validity of the will, and the competency of the proof, that the executors are obliged to prove the will by original proof, independently of the first proof; that the probate cannot be

offered in evidence, nor even the depositions of any of the witnesses, taken on the first proof, be read in evidence, except in the precise contingencies pointed out by the statute. I consider the probate, as in fact, left with the executors only for specific objects, as limited by the 25th section, and the entire case proceeds as on the original proof of a will. Where allegations are filed with the view of raising some issue, narrower than the broad and general one of the invalidity of the will and the incompetency of the proof, if such a course be regular, the rule of evidence, as I have laid it down, may perhaps be varied. But every such case must depend upon its own peculiar circumstances.