NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-GATE.—May, 1884.

HOYT v. JACKSON.

*In the matter of the application to revoke the probate of the will of* JESSE HOYT, *deceased.*

In probate controversies, the burden of proof rests, in general, upon the proponents from the beginning to the end of the litigation.

Upon an application for revocation of the probate of a will, made under Code Civ. Pro., § 2647, proponents occupy substantially the same position as if the issues of the contest had been made up on the original offer of the instrument for probate.

The amount and character of the evidence necessary for the establishment of a *prima facie* case in favor of the proponents of a will are not fixed by statute, and cannot be measured by an inflexible standard.

The Surrogate has a discretion to decide whether or not to allow the proponent of a will, after he has rested and contestant has been heard, to introduce evidence not rebutting in its character, and which would have been admissible in chief before contestant had entered upon his proofs. There is no strict rule of law upon this subject, as distinguished from a mere rule of practice which may be adhered to or abandoned, as the Surrogate may determine.

The proponents of a will, to prove their case, called only the three subscribing witnesses thereto, confined their examination, in the main, to the circumstances connected with the preparation and attending the execution of the disputed paper, and rested. Contestants thereupon asked the court to decide whether, after their proofs should be submitted, proponents would be allowed to present all material and relevant evidence touching competency and restraint which they might see fit to offer, or would be confined to matters strictly in rebuttal.—

*Held*, that proponents had not so departed from the ordinary practice in conducting their case as to warrant the court in imposing upon them the restrictions suggested.

---

A special proceeding for the probate of a will is, in effect, a proceeding *in rem*. It differs from almost all other judicial investigations, in that, when once the instrument has been produced in court, and parties in interest have been cited to attend, proponents lose control thereof in so far as that they cannot, by consent of all parties, withdraw it from the files nor, by such means, procure its admission to probate.

The provision of Code Civ. Pro., § 2618, to the effect that "any party who contests the probate of" a "will may, by a notice filed with the Surrogate at any time before the proofs are closed, require the examination of all the subscribing witnesses to a written will, or of any other witness whose testimony the Surrogate is satisfied may be material; in which case all such witnesses . . . . . must be so examined"—has not served to enlarge, in any respect, the rights which contestants enjoyed under the provisions of the laws of 1837 (ch. 460) and 1841 (ch. 129) for which the statute quoted is a substitute, and which specified a request, instead of a requisition, for the examination.

The proponents of a paper claimed to be decedent's will having finished the presentation of their proofs, contestant filed an affidavit alleging facts, which tended to show that the testimony of certain persons named "may be material" to the issues raised, and filed and served

upon proponents a notice that she required the examination of those persons before she proceeded to introduce proofs in opposition. Upon the day specified in the notice, none of the persons in question were produced for examination. A contest thereupon arising as to the respective rights of the parties in the premises,—*Held*, under Code·Civ. Pro., § 2618,

1. That the duty to produce the witnesses lay on proponents, not by reason of a command in the statute, but because contestant could rest on the rule that, until they had been produced and examined, the will could not be admitted.

2. That the persons so produced were not properly the witnesses of either party ; that they were to be examined because the law demands it ; and that the course of examination, *i. e.*, which party should first interrogate, was a matter purely in the Surrogate's discretion.

3. That he had the like discretion as to the time of such examination, which would ordinarily be left to the party applying for the same.

APPLICATION by decedent's daughter, Mary I. Hoyt, under Code Civ. Pro., § 2647, to revoke the probate of his will; opposed by James W. Jackson, and others, the executors. Upon the hearing of the application, proponents having rested, contestant asked the court to decide whether after her proofs should have been submitted, proponents would be limited, in the production of further evidence, to matters strictly in rebuttal. On May 2nd, 1884, the following opinion was filed :

ROSCOE CONKLING, WILLIAM D. SHIPMAN and AARON KAHN, *for petitioners*.

JOSEPH H. CHOATE, RASTUS RANSOM and ELIHU ROOT, *for the will*.

THE SURROGATE.—The questions at issue in this proceeding are the following :

*First.* Was the instrument lately admitted to probate as the last will and testament of Jesse Hoyt duly executed in accordance with all the formalities prescribed by law ?

*Second.* At the time of its execution, was the decedent of sound mind and memory ?

*Third.* Does it express his free, untrammeled testamentary purposes ?

The decree whereby it has heretofore been admitted to probate must be revoked in accordance with the prayer of the petitioners, unless these questions shall all be answered in the affirmative. The situation of the proponents does not practically differ from that which they would occupy if the issues of the present contestation had been made up at the time the paper here in dispute was originally offered for probate (Code Civ. Pro., § *2652 ;* Collier v. Idley's Executors, *1 Bradf., 94*). And the decree by which it was granted must stand or fall, according as the proponents shall satisfy or fail to satisfy the Surrogate that, within the meaning of § 2623, the alleged will " was duly executed, and the testator, at the time of executing it, was in all respects competent to make a will, and was not under restraint."

It has been repeatedly held in this State that, in probate controversies, the burden of proof rests in general upon the proponents from the beginning to the end of the litigation. It has, nevertheless, been the practice of Surrogates' courts to receive from proponents, in the first instance, but slight evidence of a testator's mental capacity and freedom from undue influence or restraint, affording them, at the close of the presentation of the contestant's proofs upon those issues, the opportunity of attacking such proofs by any relevant and material testimony, even though not of such a character as to be deemed strictly rebuttal. It seems to me that this

practice is very sensible and proper, and that its abandonment would give rise to much inconvenience to suitors, the public and the courts.  It could scarcely fail to result in greatly prolonging the duration of trials.

In the exercise of reasonable caution, proponents would feel bound to defend against all possible assaults the competency of their decedent and his freedom from restraint.  This course would often be pursued in cases where it would subsequently appear that the precaution had been quite unnecessary.

Now, in the case at bar, the proponents have thus far called three witnesses, and have examined them touching their knowledge of the execution of the paper here propounded.  One of these witnesses, Mr. Cornelius Van Santvoord, testified with considerable particularity in respect to the preparation of that paper, and the bodily and mental condition of the testator about the time of its execution, and in respect also to other testamentary instruments previously executed.

The proponents have now rested, and the contestants, through their counsel, ask the court to decide whether, after the proofs on their part shall have been submitted, the proponents will be allowed to present in opposition any and all material and relevant testimony touching competency and restraint which they may see fit to offer, or whether, in the presentation of such testimony, they will be limited to matter strictly in rebuttal.  Contestants' counsel does not attack the authority of this court to pursue the practice to which I have already referred, but they claim that these proponents have undertaken at the outset to carry a greater burden than at that stage of the proceedings they were called upon

to bear, and that, having entered upon such undertaking, they should not now be permitted to abandon it, and should be strictly limited to rebuttal evidence when, at the close of the contestants' case, they are given opportunity to reply.

Assuming, for the present, that the contestants are correct in insisting that their antagonists have exceeded the limits within which parties proponent have been accustomed to confine themselves in the conduct of probate controversies, I cannot sanction the claim that there is any strict rule of law applicable to the situation, as distinguished from a mere rule of practice, which may be adhered to or abandoned, as the Surrogate may determine.  On the contrary, I am confident, upon a careful examination of authorities, that I am at liberty to exercise my discretion in deciding whether or not to allow the proponents, at a subsequent stage of these proceedings, to introduce evidence which shall not be rebuttal in its character, and which would have been admissible in chief before the contestants had entered upon their proofs (Holbrook v. McBride, *4 Gray*, *215;* Morse v. Potter, *4 Gray*, *292;* Union Water Co. v. Crary, *25 Cal.*, *504;* Kohler v. Wells, Fargo & Co., *26 Cal.*, *613;* Bryan v. Walton, *20 Ga.*, *510;* Briggs v. Humphrey, *5 Allen*, *314;* Gaines v. Commonwealth, *50 Penn. St.*, *319;* Finlay v. Stewart, *56 Penn. St.*, *183;* Day v. Moore, *13 Gray*, *522;* McCoy v. Phillips, *4 Rich.*, *S. C.*, *463;* Morris v. Wadsworth, *17 Wend.*, *103;* Hastings v. Palmer, *20 Wend.*, *225;* Ford v. Niles, *1 Hill*, *300;* Wright v. Foster, *109 Mass.*, *57;* Marshall v. Davies, *78 N. Y.*, *414*).

In any state of the evidence, I should, therefore,

deem it purely a matter of discretion, whether to grant or deny the motion made by these contestants. But I fail to find, upon reviewing the testimony which has thus far been given, that the proponents have substantially departed in any respect from the ordinary course of procedure in controversies of this character. They have called no persons to the stand except the subscribing witnesses to the paper which they have propounded for probate, and in the examination of those witnesses, they have, in the main, confined themselves to the circumstances attending the actual execution of the disputed paper, and the circumstances connected with its preparation. The amount and character of evidence necessary for the establishment of a *prima facie* case, in favor of the proponents of a will, are not fixed by statute, and cannot be measured by an inflexible standard.

In no case, of course, can proponents safely rest until they have introduced such evidence respecting the execution of the disputed paper, the strength of the decedent's mind, and the freedom of his will, as would entitle them to a favorable decree in the event of the contestants' failure to introduce evidence in opposition. They must, therefore, in the nature of things, be permitted within reasonable limits to determine for themselves the nature and extent of the evidence by which their contention shall be supported. I do not think that the proponents in the case at bar have departed from the ordinary practice in any such fashion as to warrant me in imposing upon them the restrictions suggested by contestants' counsel.

The contestants may proceed with their proofs on Tuesday next.

On May 13th, 1884, the Surrogate filed the following opinion, in the same matter :

THE SURROGATE.—Section 2618 of the Code of Civil Procedure contains the following provisions as to proceedings in Surrogates' courts, for the probate of a paper propounded as a will:

"The Surrogate must cause the witnesses to be examined before him. The proofs must be reduced to writing. Before a written will is admitted to probate, two at least of the subscribing witnesses must be produced and examined, if so many are within the State, and competent and able to testify. . . .. .   Any party who contests the probate of the will may, by a notice filed with the Surrogate at any time before the proofs are closed, require an examination of all the subscribing witnesses to a written will, or of any other witness whose testimony the Surrogate is satisfied may be material; in which case all such witnesses who are within the State and competent and able to testify must be so examined."

What is the meaning of the words above quoted, and how, if at all, have they changed the course of procedure which obtained in probate controversies before the enactment of the Code ?

These questions arise upon the following state of facts :  The proponents of a paper which is claimed to be this decedent's will, lately finished the presentation of their proofs.  The contestant, through her counsel, thereupon filed an affidavit alleging facts which tend to show that the testimony of certain persons in such affidavit named "may be material" to the issues of

this proceeding. The materiality of this testimony does not seem to be disputed. The contestant also caused to be filed and to be served upon the proponents a notice to the effect that, before proceeding to introduce proofs in opposition to probate, she required the examination of the persons in such affidavit, named. None of these persons were produced for examination on the day specified in the notice.

Upon these facts, I am now asked to determine—

*1st.* Are the proponents bound, under the provisions of § 2618, above quoted, to produce before the Surrogate the persons named in the notice ?

*2nd.* When those persons shall be produced, what will be the respective rights and privileges of the parties hereto, in reference to their examination ?

*3rd.* In case it shall be decided that the proponents are responsible for their production, shall the contestants be conceded as of course the right to an immediate examination, or is it discretionary with the Surrogate when such examination shall be had ?

Upon these questions, the views of opposing counsel are utterly at odds. On the one hand it is claimed that § 2618 has made a radical change in the procedure of Surrogates' courts, and has very substantially enlarged the powers and privileges of contestants. It is insisted, on the other hand, that the section in dispute has effected no essential modification in the law as it existed before the enactment of the Code. It is manifest that the particular facts and circumstances of this case are of no importance to the present inquiry, and I shall, therefore, refrain from commenting upon them.

The matters .now to be decided are purely matters of general practice and procedure, whose determination in the case at bar will be applicable to all other cases of disputed probate.

I understand contestant's counse. practically to claim that parties opposing the probate of a will are no longer required, unless they choose so to do, to produce wit-. nesses in their own behalf and submit them to the cross-examination of their adversaries, but that, on the contrary, they can require their adversaries to produce and examine in chief every person who can give evidence material to the issues, and that, at the conclusion of such examination, they themselves can exercise all the privileges of cross-examination, with such right of impeachment, contradiction, etc., as that privilege ordinarily carries with it.

In opposition to this view it is insisted, on behalf of the proponents, that § 2618 does not in terms require at their hands either the production for examination or the examination of any of the witnesses included in the contestant's notice. They contend that the sole purpose which that section aims to accomplish is to secure to contestants the absolute power of preventing the admission of a will to probate until they have first been afforded an opportunity of taking the testimony of every witness whom the Surrogate shall decide to be material. Either of these constructions is plausible enough, and both of them have been supported by ingenious and elaborate arguments.

As the language of the section is fairly susceptible of such widely different interpretations, it is well to inquire what statutory provisions *in pari materia* were

in force at the time of its enactment.   An examination
of this question discloses the fact that all those portions
of the Code which relate to the mode of proving a will
are founded in the main upon the provisions of two
statutes which were operative for forty years after their
enactment, and which were but recently abrogated by
the general repealing act which took effect simultane-
ously with the taking effect of the Code itself.   One of
those statutes is chapter 460 of the laws of 1837, the
other is chapter 129 of the laws of 1841.   The former
act provided, in its tenth section, that, in a proceeding
for the probate of a will, the Surrogate should " cause
the witnesses to be examined before him.   All such
proofs and examinations," it said, " shall be reduced to
writing.   Two at least of the witnesses to such will, if
so many are living in this State, and are of sound mind,
and are not disabled from age, sickness or infirmity
from attending, shall be produced and examined."

Section 11 provided as follows :  " In case the proof of
any such will is contested, and any person having the
right to contest the same shall, before probate made, file
with the Surrogate a *request in writing* that all the wit-
nesses to such will shall be examined, then all the wit-
nesses to such will who are living in this State, and of
sound mind, and who are not disabled . . . . . from
attending, shall be produced and examined."

Section 17 declared that no written will should be
deemed proved until the witnesses to the same, residing
within this State at the time of such proof, of sound
mind, etc., should have been examined pursuant to law.

By chapter 129 of the Laws of 1841, the scope of
§ 11 of the act of 1837 was greatly enlarged.   It was

made to apply to all witnesses whom any person interested in the proof of the will should "*request to be examined*," and that, too, whether such witnesses were
or were not subscribing witnesses to such will, provided
only that the Surrogate should first be satisfied that
they could give material testimony.  It will be observed that the "request" above referred to could be
made by any parties to the proceeding, by proponents
as well as by contestants.   This word "request," as
used in the acts of 1837 and 1841, has, it seems to me,
substantially the same meaning as the word "require,"
in § 2618 of the existing law.  The change of phraseology has not made and could not have been intended
to make any change in the signification.   Now, while
the statute of 1841 was in force, what would have been
the effect of a "request" made in pursuance of its
provisions by any party interested in the proceeding?
Would it have imposed upon the opposite party the
duty of producing and examining the witnesses whose
examination was so "requested," and would it have
given the party so "requesting" rights of cross-examination, impeachment, contradiction, etc., superior to
those which his antagonist could have exercised? Such
an interpretation of § 11 would have practically made
possible at every trial this extraordinary state of affairs—that proponents could have been compelled to
produce and examine as their own witnesses all persons
whose testimony was wanted by the contestants, and
that contestants could have been similarly compelled
to produce and examine as *their* witnesses all persons
whose testimony the proponents desired.

It can scarcely be contended that the Legislature ever

meant to bring about such a complete inversion of the customary and orderly procedure of a judicial investigation. The purpose and the meaning of the statutes of 1837 and 1841, so far as their provisions relate to the subject in hand, are not hard to understand. Those statutes contemplated, as the present code contemplates, that a proceeding for probate is often conducted by the Surrogate without the intervention of counsel either for or against the will, and without the formulating of any distinct and definite issues. They prescribed, therefore, that a certain specified amount and kind of evidence should be the absolute pre-requisite to the admission of a will to a probate; and that, too, even though no person interested appeared in opposition; and they provided simple and efficacious means by which a contestant might insist upon the production of certain other evidence, and might prevent the entry of a decree, establishing the will, until that evidence had been introduced.

I think that the substitution of the Code provisions for those contained in the acts of 1837 and 1841, has not served to enlarge in any respect the rights which contestants formerly enjoyed. My construction of § 2618 is this : By filing such a notice as is therein mentioned, and by satisfying the Surrogate of the materiality of the witnesses whom such notice specifies, contestants can effectually block the probate of a disputed will until such witnesses (if competent, within the State, etc.) have been examined. If, after filing such a notice, contestants should cease to take any active part in the proceeding, it would nevertheless be the duty of the Surrogate to take heed that no decree should be

entered, admitting the will, until the witnesses named in the notice had been first examined.

For this reason, I hold that the duty of producing such witnesses falls upon parties proponent, not because the statute so declares, for it does not, but because, as it fails to impose that duty upon parties contestant, they can rest securely upon the fact that, until such witnesses *have* been produced and examined, the will cannot be admitted to probate.

*Second.* Then comes the question, by which party should the witnesses produced according to notice be first examined ? In answering this inquiry, it is important to consider a fact which has been the subject of comment by the counsel on both sides of this controversy. I refer to a peculiarity of probate proceedings which distinguishes them from almost all other judicial investigations. When once an instrument purporting to be a will has been produced before the Surrogate, and parties in interest have been summoned to attend its probate, it is no longer under the control of the persons who have propounded it. They cannot claim the right to withdraw it from the files, even though all persons interested consent to that course. Nor, on the other hand, can they, by obtaining the consent of all such persons, procure its admission to probate.

The proceeding is in effect a proceeding *in rem.* The Surrogate must enter a decree pronouncing for or against the will. The parties may, of course, be active or passive, and may favor or oppose probate according to their interests or inclinations. But whatever course they may pursue, it is the Surrogate's duty (Code, §*2622*) "to inquire particularly into all the facts and cir-

cumstances," and not until he himself is "satisfied of the genuineness of the will and the validity of its execution" can he admit it to probate (id).

These considerations lead me to the conclusion that the course of the examination of witnesses, brought into court by proponents at the instance of contestants, is a matter purely in the discretion of the Surrogate. Such witnesses must be examined because the law demands their examination, whenever the proper notice has been filed and the Surrogate has found them to be material. They are not to be charged, so to speak, to the account of either party. *They are to be examined by the Surrogate.* In cases where the proceeding before the Surrogate has assumed, as it has here assumed, the form of a trial, in which the parties are represented by counsel, the Surrogate can doubtless require such counsel to assist him in the examination.

But it seems to me that neither party can demand, as of right, the opportunity of first examining the witness who has been produced in pursuance of the notice, and that neither party can demand, as of right, that his opponent shall be required to begin such examination. The Surrogate should see to it that *both* parties are afforded a fair opportunity for full and searching investigation. In many instances—perhaps in most instances—where witnesses shall be thus brought into court at the request of contestants, it will be the most natural course to call upon the contestants themselves to pursue the inquiry in the first instance, because, presumably, they will be better advised than their adversaries as to the precise matters which they wish and expect to prove; but in such cases a direction to the

contestants to begin the inquiry will not of itself involve any limitation upon their right of making that inquiry as searching and thorough as they would have been permitted to make it, if the witness had been voluntarily produced by the opposite party and had testified in its behalf.

How far, if at all, the conduct of the examination of such witnesses may properly be regulated by a consideration of their friendliness or unfriendliness to the one party or the other, or by other circumstances apparent when they are upon the stand, is a matter which will be determined when the occasion for its determination arises.

*Third.* There only remains to be considered the question when it is that witnesses produced in accordance with § 2618 are to be examined. I hold that this is a mere question of order of proof, and that it is entirely within the discretion of the Surrogate. In the exercise of such discretion, he would ordinarily permit the party applying for the examination to decide for himself when that examination should be had. In the present case, I can see no reason why the testimony of the persons named in the notice should not be taken at once, if the contestant so desires. As those persons are severally called to the stand, the court will give whatever special direction as to their examination the circumstances shall seem to warrant.