NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—July, 1884.

COOPER *v.* BENEDICT.

*In the matter of the application for revocation of pro-
bate of the will of* TUNIS COOPER, *deceased.*

The enactment of Code Civ. Pro., § 2622 has lent a new sanction to the
   doctrine enunciated in Delafield v. Parish, 25 N. Y., 34,—that the pro-
   ponent of a will is bound to prove to the satisfaction of the court that
   the paper in question declares the will of the deceased, and that the
   supposed testator was, at the time of execution, of sound and dispos-
   ing mind and memory.

Under Code Civ. Pro., § 2652, requiring the Surrogate, if he " decides that
   the will is not sufficiently proved to be the last will of the testator,"
   etc., to make a decree accordingly, the same rule is applicable where
   the proceeding is, in form, one to revoke a decree of probate already
   granted.

APPLICATION by Tunis B. Cooper and Allen B.
Cooper, sons of decedent, for a decree revoking the
probate of his will; opposed by Eliza Cooper, widow
and executrix, and Eli Benedict, executor thereof.
The facts are stated in the opinion.

A. J. ROGERS, *for petitioner.*

AMOS G. HULL, *for respondents.*

THE SURROGATE.—" Before admitting a will to pro-
bate," says § 2622 of the Code of Civil Procedure, " the
Surrogate must inquire particularly into all the facts
and circumstances, and must be satisfied of the genu-
ineness of the will and the validity of its execution."
The enactment of this statute has given a new sanc-
tion to a principle which has been frequently asserted

by our courts, and which, in Delafield v. Parish (25 *N. Y.*, 34), is thus enunciated :

"In all cases the party propounding the will is bound to prove to the satisfaction of the court that the paper in question declares the will of the deceased, and that the supposed testator, at the time of making and publishing the document, was of sound and disposing mind and memory. . . . . . If, upon a careful and accurate consideration of all the evidence on both sides, the conscience of the court is not judicially satisfied that the paper in question contains the last will of the deceased, the court is bound to pronounce its opinion that the instrument is not entitled to probate."

These doctrines are applicable to the case at bar, although in form this proceeding is not a proceeding *for* probate, but one to *revoke* probate already granted (Code Civ. Pro., § 2652; Collier v. Idley's Ex'rs, 1 *Bradf.*, 94).

To the voluminous testimony taken before the referee, and submitted for my consideration, I have twice given attentive reading. As a result, I am bound to declare that I am "not judicially satisfied that the paper (here) in question contains the last will of the decedent." I have grave doubts whether, at the time of its execution, Tunis Cooper was mentally competent to make a will; whether he was capable of sufficient thought, reflection and judgment to know what property he had, and intelligently decide and declare whom he would make, and whom he would refuse to make, the objects of his testamentary bounty. His bodily and

mental condition on April 2d, 1881, and thenceforward for twelve days, to and including April 14th, 1881, when he executed this alleged will, has been the main topic of controversy in this proceeding. As to these matters, the evidence is very conflicting. Statements of some of the witnesses are diametrically opposed—and that, too, in important particulars—to statements of others, and the value of much of the testimony for the will, and much of that against it, is seriously impaired by the fact that it was given by witnesses whose interests and sympathies are greatly involved in the contest. Outside the region of conflict, there is one circumstance which has greatly impressed me, and, as much as any other, has excited my doubts of decedent's competency. He had three sons, Tunis, Allen and Franklin, all of whom were members of his household. Tunis was more than thirty years of age; Allen was twenty-two, and in business with his father as a wheelwright; Franklin, above ten. These sons are mentioned by name in the will, and so mentioned as necessarily to involve the notion that two of them, at least, and perhaps all three, are yet in their minority.

The fourth clause of the paper provides that, upon the death of the decedent's wife, and the consequent termination of her life estate in certain real property, that property shall be sold by the executor, and the proceeds divided into three equal parts, and paid " to my three sons, Tunis, Allen and Franklin, as they shall respectively arrive at the age of twenty-one years." The executor is subsequently instructed to " invest the share, to which either of my sons may be

entitled during his minority, on bond and mortgage,"
etc. ·

The interest on this investment is directed to be
paid, semiannually, to "the lawful guardian of my
sons, for their benefit during their minority." The
eleventh clause is, in part, in these words: "I hereby
appoint my friend, Eli Benedict, testamentary guar-
dian of my minor children during their minority."
The twelfth clause provides for the sale of certain
New Jersey realty, and for the division of the pro-
ceeds into four equal parts. One of these parts is
given to the widow, and the others "to my three
sons, Tunis, Allen and Franklin, as they shall arrive
at the age of twenty-one years."

Now, it appears, by Mr. Meyer's testimony, that
every word of this instrument was carefully read to
the testator, and afterwards carefully read again.
Some portions, indeed, seem to have been three times
called to Mr. Cooper's attention. It is certainly
strange, upon the assumption that he had sufficient
possession of his faculties to make a will, that he did
not, at one time or another, of the three readings,
make known the fact that only one of his chil-
dren was under age. If the will had contained
but a single intimation that he had more than one
minor child, and if it had been read to him but
once, his silence might not be deemed specially
significant; but in at least six instances it conveys
a distinct intimation that, besides Franklin, the tes-
tator had certainly one child—perhaps two chil-
dren—not yet of age; and each of these six intima-
tions was thrust at least twice upon the decedent's

attention.   His failure to suggest a change, in this regard, in the phraseology of the will, or even to make any comment upon the evident error of its draughtsman, is, in my judgment, a circumstance of the gravest importance.   It indicates that the decedent's mental strength had so far abated that he had actually forgotten that all his children but Franklin had come of age ; or it shows that his mind was so far away from the business of will-making as to render it unsafe to treat the paper here propounded as an embodiment of his testamentary purposes.

A decree may be entered, granting the petition for revocation of probate.