Testatrix, aged 81 years, had been found incompetent in lunacy proceedings one week before the execution of her will, and her testimony in such proceedings indicated to the surrogate that her memory was weakened by age. Her will released debts due from two of her sons, which the petition in the lunacy proceedings alleged represented money which her sons had obtained by undue influence. *Held*, that probate would be denied.

Application for the probate of the last will of J. B. Widmayer, deceased. Probate denied.

See 65 N. Y. Supp. 83.

T. M. Tyng, for proponent.
Eugene L. Bushe and Cardozo & Nathan, for contestants.

THOMAS, S. ·The instrument offered for probate bears date January 2, 1895, at which time the decedent was of the age of about 82 years. On December 26, 1894, only a week previous, in a proceeding in the supreme court against the decedent, a verdict was rendered by a jury to the effect that she was at that time "incompetent to manage herself or her affairs, or her lands, tenements, goods, and chattels." This verdict was joined in by the three commissioners who had been appointed by the court, and on January 24, 1895, after hearing arguments of counsel, an order of the court was made by Hon. George C. Barrett, justice, by which a motion for a new trial was denied, the finding of the jury was confirmed, and a trust company was appointed the committee of the estate of the decedent. No appeal seems to have been taken from this order, and thereafter, and until the death of the decedent in 1899, her affairs continued to be managed by the committee. It was not charged in the lunacy proceeding that the decedent was subject to any delusions, or that she had any acute mental disease, and the allegation in the petition was to the effect that she

"now is, and for some time past has been, a person incompetent to manage herself or her affairs, by reason of her advanced age and lack of memory and understanding, and because she is unduly subjected to wrongful influences exerted upon her by two of her sons, Henry E. Widmayer and William F. Widmayer, and in consequence thereof is wasting her property, and has been deprived of part thereof by them, and is liable to be deprived of the remainder thereof if allowed to exercise control over it." There is no presumption of sanity in a proceeding to admit a will to probate, and the burden of proof as to testamentary capacity is always upon the proponent. Delafield v. Parish, 25 N. Y. 10, 29; Rollwagen v. Rollwagen, 63 N. Y. 504, 517. A judicial determination of lunacy, made against a testator in his life-time, prior to the execution of the will, or within the period covered by the finding of the jury, is not conclusive as to testamentary incapacity, but it is prima facie or presumptive evidence of such incapacity. In re Coe's Will, 47 App. Div. 177, 62 N. Y. Supp. 376; In re Clark, 57 App. Div. 5, 67 N. Y. Supp. 631; Lewis v. Jones, 50 Barb. 645; Wadsworth v. Sharpsteen, 8 N. Y. 395. I do not find any decision which assumes to define just how potent this presumption is, and I am of the opinion that each case must be governed by its own facts, and that the force of the proofs is to be determined by all of the circumstances attending them. In this case the charge and the finding were not of a mental disturbance of a class which rendered a lucid interval probable. Mental decay and loss of memory caused by advanced age and the wearing out of the brain by long use, if it existed at the time of the verdict, was probably not improved in the following week. The verdict was not rendered upon default, but was given after a full hearing, upon which the decedent was represented by eminent counsel, and she was herself present before the jury, and was examined and cross-examined for the express purpose of testing her mental capacity. With all of these advantages for personal observation and knowledge of the facts, a jury of 13 indifferent men and 3 commissioners selected by the court were unanimously of the opinion that her mind was impaired to an extent which required, for her own protection, that a committee be appointed of her estate. The finding thus made was reviewed before an eminently learned and humane justice of the supreme court, and was confirmed. These facts were, within the decisions, proper for me to know, and they are evidence in the matter now before me. I must give them such weight as they deserve, and they seem to me to be most convincing. The stenographer's transcript of the evidence given by the decedent in the lunacy proceedings was received by me, on its accuracy being conceded, as a series of declarations made by her. Making full allowance for the facts that she was very hard of hearing, that the questions had to be repeated to her, that she was examined amid unusual surroundings, and that her native tongue was German, the examination is full of evidence of a memory greatly weakened by age, her forgetfulness extending to an inability to remember the amount and condition of her estate and the names of her descendants who had natural claims upon her bounty. It scarcely needed the evidence of Dr. Hamilton as to her appearance during this examination to satisfy me

that the verdict of the jury and my decision might both rest upon this examination alone.   The will itself shows the influences which led to its preparation.   On the trial before the jury it was shown that upwards of $15,000 had been obtained from the decedent by two of her sons, and it was urged in her behalf that, under a previous will executed by her, these sums of money would be charged against the shares of these sons, thus furnishing what was called "security" for repayment.   In the paper offered for probate these debts are released and forgiven, and other advantages are given to these two sons and their children.   There is abundant evidence in the voluminous record of the trial before me of the great infirmity of mind of the decedent, and of the absolute control that these two sons exercised over their mother, and of the great distress they caused her in clamoring and quarreling over the possession of her estate, and of their contrivances in leading her to entertain prejudices and dislikes against others of her descendants.   The evidence offered in support of the will is nearly all of it open to suspicion on various grounds, or is lacking in persuasiveness.   Taking all of the evidence together, I will find as facts that the decedent, because of mental decay arising from advanced age and physical weakness, was not of sufficient testamentary capacity, and that the paper propounded for probate was obtained by the undue influence of her sons William and Henry.

Probate denied.