---

## In re GEDNEY'S WILL.

(Surrogate's Court, New York County. May 12, 1913.)

1. WILLS (§ 163*)—PROBATE—BURDEN OF PROOF—UNDUE INFLUENCE.
 After the factum of a will is made out, the burden of proving undue influence is on contestant.
 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 388–402; Dec. Dig. § 163.*]

2. WILLS (§ 52*)—BURDEN OF PROVING INSANITY.
 After a great lapse of time, the burden of proving insanity of a testator in ejectment or other proceeding may rest upon the person asserting it.
 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig § 52.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 322*)—PROBATE—BURDEN OF PROOF—TESTAMENTARY CAPACITY.

According to the practice in the Surrogate's Court, proponent first establishes the factum of will by showing due execution and testator's capacity and freedom from restraint, when contestant puts in his evidence of testator's capacity, after which proponent again offers proof.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 762–765; Dec. Dig. § 322.*]

4. WILLS (§ 52*)—PROBATE—BURDEN OF PROOF.

Proponent must bring the testamentary paper within the statute of wills in the first instance, and in so doing establish testator's competency; Code Civ. Proc. § 2623, requiring the will to be admitted as a valid will if it appears to have been duly executed and that testator was competent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. § 52.*]

5. WILLS (§ 52*)—PROBATE—PRESUMPTION OF SANITY.

The legal presumption of sanity, while it weighs in favor of testator, does not relieve proponent from proving testator's testamentary capacity in the first instance.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. § 52.*]

6. EVIDENCE (§ 90*)—"BURDEN OF PROOF."

The term "burden of proof" is an equivocal term of art, denoting primarily the obligation to establish an allegation by preponderating proofs, and secondarily the necessity of proceeding with the evidence at a particular point of time.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 112; Dec. Dig. § 90.*

For other definitions, see Words and Phrases, vol. 1, pp. 904–907; vol. 8, p. 7593.]

7. WILLS (§ 288*)—PROBATE—PRESUMPTIONS.

There is no presumption in favor of the validity of a will before it is fully established by a decree of probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 651, 652, 662, 664; Dec. Dig. § 288.*]

8. COURTS (§§ 89, 92*)—DECISION—STARE DECISIS.

The doctrine of stare decisis does not give effect to dicta or to the application of the principle of law, but is limited to the very principle on which a particular decision rests; a principle being settled only when it is invariable, irrespective of the facts of the particular case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. §§ 89, 92.*]

9. COURTS (§ 100*)—DECISION—DOCTRINE OF STARE DECISIS.

The doctrine of stare decisis does not operate upon inconsistent principles adjudicated by the same court, nor cover a principle not constantly acquiesced in by the same court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 341–343; Dec. Dig. § 100.*]

10. COURTS (§ 89*)—DECISION—DOCTRINE OF STARE DECISIS.

Under the common-law doctrine of stare decisis, no amount of mere repetition of a rule not distinctly enunciated would give it the force of law; the maxim "common error makes law" not applying.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. § 89.*]

11. WILLS (§ 52*)—PROBATE.
    At common law, one relying on a will in opposition to the title of an heir must show that testator was of sound mind.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. § 52.*]

12. WILLS (§ 55*)—PROBATE—BURDEN OF PROOF—SANITY.
    The burden of establishing testamentary capacity is ultimately cast upon the proponent of a will, as it was at common law, so that, where the proofs thereon do not preponderate, proponent has failed to establish the will; Code Civ. Proc. § 2622, requiring the surrogate to be satisfied of the genuineness of the will and the validity of its execution before admitting it.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

13. WILLS (§ 55*)—PROBATE—SUFFICIENCY OF EVIDENCE—TESTAMENTARY CAPACITY.
    Evidence in probate proceedings *held* to show that testatrix had sufficient testamentary capacity.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

14. EVIDENCE (§ 568*)—OPINION EVIDENCE—SANITY.
    The evidence of nonmedical witnesses on the question of sanity is not of great value, unless they are intelligent and have a very correct idea of mental disorders, or the acts testified to are in themselves irrational.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2392–2394; Dec. Dig. § 568.*]

15. WILLS (§ 336*)—PROBATE.
    Even in a contested probate proceeding, the surrogate must see that the will is duly proved with respect to the questions of factum and compliance with the statute of wills, after which prima facie proof is made the evidence is taken at the risk of the parties, as in other civil cases, so that objections to evidence, etc., may be waived.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 792; Dec. Dig. § 336.*]

16. WILLS (§ 320*)—PROBATE—CONDUCT OF TRIAL.
    On the trial of the issues other than the factum of a will, the surrogate sits judicially, and his duties are much the same as those of the judges in other civil cases, and he should not interfere too much with the conduct of the trial, by restraining or assisting one side or the other.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 758–760; Dec. Dig. § 320.*]

17. WILLS (§ 510*)—OPINION EVIDENCE—INSANITY.
    A physician was improperly allowed to testify to testatrix's competency to do particular acts.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1106; Dec. Dig. § 510.*]

18. EVIDENCE (§ 16*)—JUDICIAL NOTICE—"SENILE DEMENTIA."
    The surrogate will take judicial notice of the fact that the technical phrase "senile dementia with paranoiac tendency" means old-age insanity with a tendency to insanity.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 20; Dec. Dig. § 16.*

    For other definitions, see Words and Phrases, vol. 7, p. 6410.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

19. EVIDENCE (§ 574*)—OPINION EVIDENCE.
    Opinions, even of experts, should not control contradictory facts established by direct evidence.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2400; Dec. Dig. § 574.*]

20. WILLS (§ 55*)—PROBATE—PROOF OF INSANITY.
    The best proof of insanity is a demonstrated failure of testatrix to react to the common facts of life.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

21. WILLS (§ 300*)—PROBATE.
    As a rule, the burden of proof is on proponent to establish the testamentary act with greater particularity, where one of the beneficiaries superintended the execution of the will and received a benefit thereunder, than would be the case where the will was executed under wholly disinterested circumstances.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 697; Dec. Dig. § 300.*]

In the matter of the probate of a paper propounded as the last will and testament of Josephine Gedney, deceased. Decree of probate.

Miller & Hartcorn, of New York City, for proponent.

Herman Goldman, of New York City (Joseph T. Weed, of counsel), for contestant.

FOWLER, S. The contestant filed two allegations against the paper writing propounded in this proceeding.

[1] The first allegation of undue influence does not seem very strongly pressed. On that allegation the contestant, after factum of will is made out, has the burden of proof, in the primary sense of that term, of establishing such influence by a preponderance of proof. Matter of Will of Kindberg, 207 N. Y. 221, 100 N. E. 789; Matter of Will of Falabella (Sur.) 139 N. Y. Supp. 1003.

[2] On the contestant's second allegation, or that of want of testamentary capacity on the part of testatrix, the surrogate ruled at the outset of the trial that the burden of proof, in the sense of sustaining the issue by a preponderance of proofs, rested in a probate proceeding on the proponent of the will. After a great lapse of time the burden of proving insanity of a testator in ejectment or other proceeding may rest on him asserting it. But this is an exception to the rule, or what is called a rule derived from a minor premise of a larger rule.

[3] According to the practice and procedure in this court, the proponent of a will on an issue of testator's capacity first proceeds to establish the factum of will by making out, either through the testimony of the attesting witnesses to the will, or otherwise, in a proper case, the due execution of the testamentary paper in conformity with the statute of wills, and also testator's capacity to testamentate and freedom from restraint. Then a contestant proceeds to present or give in his evidence in support of the written allegations interposed to the petition for probate. When the contestant rests, the proponent again goes forward, and offers his adminicular proofs, or, in other

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

words, his additional evidence in support of the will. Matter of Sperb, 71 Misc. Rep. 378, 130 N. Y. Supp. 122. The burden of proof, in the primary sense of that term, on an issue over testator's capacity, I understand to rest on proponent, in conformity with the old testamentary law of this state, and testamentary law generally.

[4] In this state it is still incumbent on the proponent of a will to bring the testamentary paper within the statute of wills in the first instance, and this in his affirmative case. So to do the proponent must establish, among other things, that the testator at the time of executing the will was in all respects competent to make a will. Section 2623, Code of Civ. Pro., formerly 2 R. S. 57, § 14; R. L. 365, § 6; sections 10, 15, Decedent Estate Law; Dayton, Sur. Pr. 175; Kingsley v. Blanchard, 66 Barb. 317, 322; Harper v. Harper, 1 Thomp. & C. 351, 355; Ramsdell v. Viele, 6 Dem. Sur. 244, 247, affirmed 117 N. Y. 636, 22 N. E. 1130; Matter of Schreiber, 112 App. Div. 495, 98 N. Y. Supp. 483, affirmed 185 N. Y. 610, 78 N. E. 1111; Matter of Goodwin, 95 App. Div. 183, 88 N. Y. Supp. 734; Delafield v. Parish, 25 N. Y. 9, 23.

[5] The legal presumption of sanity, while it works for the testator (Jackson v. Van Dusen, 5 Johns. 144, 159, 4 Am. Dec. 330; Sturdevant's Appeal, 71 Conn. 392, 42 Atl. 70), is not what the Roman law terms "levamen probationis," or, in other words, is not sufficient in itself to absolve the proponent from the necessity of proving in the first instance that testator had testamentary capacity. The cases which contain dicta to the contrary of this proposition are either explained or no longer authority on this particular point, at least in proceedings for probate of wills. Brown v. Torrey, 24 Barb. 583, 586; Harper v. Harper, 1 Thomp. & C., 351, 355; Jackson v. King, 4 Cow. 207, 15 Am. Dec. 354; Delafield v. Parish, 25 N. Y. 9, 23, 60, citing Mountain v. Bennett, 1 Cox, 353; Panton v. Williams, 2 Curt. 530.

When the proponent has made out his prima facie case of factum pursuant to the statute of wills, and also testator's legal capacity to will and his freedom from restraint, the burden of proving insanity or want of testamentary capacity has been said to be on the contestant in this state. Ramsdell v. Viele, 6 Dem. Sur. 244, 247, affirmed 117 N. Y. 636, 22 N. E. 1130; Harper v. Harper, 1 Thomp. & C. 351, 355; Matter of Blaine, 143 App. Div. 687, 689, 128 N. Y. Supp. 186. The cases before cited are all or most of them entirely consistent with the inference that the courts meant that after proponent rests the burden of proof in the sense of going forward with evidence then rests on contestant. If they mean more than this the testamentary common law has been seriously changed in this state.

[6] As I pointed out in my judgment on the Will of Falabella (Sur.) 139 N. Y. Supp. 1003, onus probandi, burden of proof, is an equivocal term of art, denoting primarily the obligation to establish an allegation by preponderating proofs, and secondarily the necessity of taking up and proceeding with the evidence in a given cause at a particular point of time. It is not always easy to determine the various senses in which this term "burden of proof" is employed by judges in the adjudicated cases in this state. Preponderance of proof no longer means at common law what it meant in Roman law, viz., a

numerical preponderance of witnesses to a given point. Many factors concur in burden of proof besides the number of witnesses. That the burden of ultimate proof, in the sense of preponderating evidence, on a plea of undue influence, is always shifted to proponent I should have thought, had it not been for the recent judgments of the Court of Appeals in Matter of Will of Kindberg, 207 N. Y. 221, 100 N. E. 789. The conclusiveness of that judgment is for the Court of Appeals in a proper case. That it is counter to the common law must be conceded. See cases on this point briefly reviewed, 10 Columbia Law Rev. 83.

Whether the use of the equivocal term, burden of proof, in the cases cited above establishes the rule in this state, that the burden of establishing insanity—the negative of sanity—rests always on contestant throughout the entire trial, is one of the most important and grave questions in our probate law. It is doubtful whether without the aid of that rule the great common law relating to testamentary dispositions of property can be as well administered in this court as it is in those jurisdictions where the rule subsists. Mr. Surrogate Rollins evidently thought it could not be (Cooper v. Benedict, 3 Dem. Sur. 136), and so I venture to think. If the term "onus probandi" is intended to be used in the cases cited in the sense of a going forward with the proofs on the issue of testator's sanity or mental competency, then the burden of proving sanity by a preponderating weight of testimony in a probate cause still is on the proponent, as at common law; otherwise, the burden of proving insanity, by controlling weight of testimony, is on the contestant, and the present law is at variance with the former law of this state (Lake v. Ranney, 33 Barb. 49, 69), and with that in force in the greater part of the civilized world where the common law prevails.

The time has come when in all judicial discussions it is essential to take a larger survey than formerly of the foundation of rules followed and applied in courts of justice. Neither the public nor the profession are satisfied with bare judicial adoptions and applications of rules, without explanation or reference to the reason which animates them. 22 Yale Law Journal, 339. In the discussion of the rule on burden of proof in testamentary causes it is highly expedient at this time to take into consideration many factors which are controlling in the legal and economic life of the state. A technical, narrow, or restricted approach to a great question of law will not be long tolerated. The burden of giving preponderating proof is inseparably connected with certain presumptions of grave consequence in litigated cases. In a criminal case such burden of proof is on the state, except in a few instances of negative averments, and the presumption is consequently always for the accused. O'Connell v. People, 87 N. Y. 377, 380, 41 Am. Rep. 379. In a proceeding in rem this burden is in favor of the res whenever the burden of proof is placed on a contestant. Thus in a probate proceeding, which is one in rem (Hoyt v. Hoyt, 112 N. Y. 505, 20 N. E. 402), if this burden of proof is placed on the contestant, the presumption is inevitably in favor of the will.

[7] That a presumption is ever prima facie in favor of the will, before it is fully established by a decree of probate, is counter to

testamentary law and to the common law of inheritance generally. Therefore to say that this onus in a probate proceeding is on the contestant and the presumption against the will is in logic and law a contradiction or absurdity. In Matter of Will of Cottrell, 95 N. Y. at page 336, it is, for example, said that on the question of factum of will "the proponent has the affirmative of the issue, and if he fails to convince the trial court he will necessarily fail to establish the will." To be sure, this ruling is confined to factum, but logically it extends and ought to extend to all the issues raised by the petition for probate. It is the proponent who in the first instance affirmatively alleges soundness of mind of a testator and a perfect compliance with every element essential to a perfect testamentary disposition of property under the statute of wills.

The doctrine of burden of proof in testamentary causes goes to the very foundation of the testamentary power and the continued exercise of that power in modern political societies. It is not a small, but a great, question. A scant or a technical view of so profound a question is an injustice, not only to the existing jurisprudence itself, but to the very order of the state. If the rule is not plain and well settled under the common-law doctrine of stare decisis, it is a duty of any court to examine the question in all the light of reason and authority. No just and reflecting person will deny that the doctrine or stare decisis has been one of the secrets of the influence of the jurisprudence of the common law, and it should always be applied in a proper instance. But the correct application of that principle is of importance to the stability of the principle itself. It should not be misapplied. Before considering whether this great question of burden of proof is res judicata, it may be well to notice some established limitations on the doctrine of stare decisis itself. No judge of first instance can relieve himself of industrious analysis of principles by mere assumptions of res adjudicata. He is bound to see to it that the particular case is legally within the principle. No other determination is often more close than that a later case is absolutely foreclosed and prejudged by a former case.

Doubtless there is no other principle of the jurisprudence of the common law of more value than the doctrine of stare decisis. It gives a superior stability to institutions of a country, where that rule is not only firmly established, but abided by in a proper instance. In England, the country which gave to us our primitive common law, a final decision of the House of Lords cannot be altered by the House itself, but only by a special act of Parliament. Tommey v. White, 3 H. L. Cas. 49, 69. This principle gives great stability to law, and the jurisprudence of a country where such a rule obtains, although without a written constitution possesses more real stability than a country of written constitutions with fluctuating decisions on constitutional or legal doctrines.

[8] But the doctrine of stare decisis is less often applied in England. If taken in its fullest extent, this doctrine does not give force to mere dicta of the high courts of justice, or even to consensus of opinion on matters not at issue. It is limited to the right principle on which a particular decision of such tribunals rests. The doctrine

of stare decisis does not extend even to the application of such principle. Lord Walpole v. Earl of Cholmondeley, 7 T. R. 138, 148. The doctrine relates to the principle itself.

It is impossible to assert, for example, that a judgment is res judicata under the doctrine of stare decisis unless the principle announced is universally true. The doctrine of stare decisis relates to legal principles only and not to facts. 7 T. R. 138, 148, supra. A principle is res judicata and within the doctrine of stare decisis only when it is invariable, no matter what the facts of a given case may be.

[9] The common-law doctrine of stare decisis does not cover a case of inconsistent principles adjudicated by the same court, nor does it cover a principle not constantly acquiesced in by the same court. It never embraces the dicta of modern judges. The principle of stare decisis at common law is not to be used as a refuge to prevent the fullest reconsideration in any proper case for reconsideration. These accepted principles of the common law need no citation of authorities to re-enforce them; they are too well established. There has, however, grown up in this country an application of the doctrine of stare decisis which is larger than the common law justifies, and which is proving very exasperating to the people at large. This is not the fault of the common law, which in the hands of a master, like Lord Mansfield, was found susceptible of the most extended and precise application to novel conditions, without a single violation of the true principles of the common law itself. The common law is, of course, always subject to legislative control. That is a fundamental of the common law itself. 2 Notes of Cas. in Ecc. Courts, 49. But, independently of statutory control, it is thought by competent observers that the common law, correctly interpreted, is equal to all the modern exigencies of the widely separated political societies, to their advantage bound by it, and not by modern Roman law.

I have stated that the doctrine of burden of proof in testamentary causes goes to the very foundations of the testamentary power in the modern state. Logically it is no less a question than this: Is the presumption of law for or against the validity of a last will and testament? A mere rule of procedure may have vital consequence upon the content of the law. Concerning the question last stated, the decisions of the courts of this state are in principle, if closely analyzed, not in agreement. This is not peculiar to the particular jurisprudence of this state. It is necessarily so wherever law is built up from detached fragments not closely connected in time. In such a situation it is the law of the ulterior court of appeal which alone controls.

There is a very plain instance in our reports of a statement which is not only not res adjudicata within the principle of stare decisis, but which denotes a fundamental difference in conception from another great case in the same court on the judicial attitude towards that technical res, which in a court of probate is denominated a will. In Delafield v. Parish, hereafter considered, Judge Gould in a dissenting opinion in the Court of Appeals practically announced that the presumption of law, at any stage of a probate cause, after prima facie proof of factum, was for the will. This does not seem to me to be consistent with the pronouncement of the more recent adjudica-

tion of the same court.  In Matter of Delano, 176 N. Y. 491, 68 N. E. 872, 64 L. R. A. 279, it was said:

"The privilege of making a will is not a natural or inherent right, but one which the state can grant or withhold at its discretion."

This tremendous pronouncement, it should be observed, does not seem to take into account an older statement to the contrary by the Court of Errors in this state, a court of equal authority.  In Remsen v. Brinckerhoff, 26 Wend. 325, 333, 37 Am. Dec. 251, the very point received the careful consideration of at least one judge, and following Lord Mansfield in Wyndham v. Chetwynd, 1 Burr. 414, 419, it was said in substance that the power of willing was an incident of the right of property, and that a statute of wills was a mere temporary regulation of the right.  Thus it is that this is an example of a very important statement which is not res judicata.  When the time finally comes that this great question to the future of the world must be fully reconsidered, in its constitutional and fundamental aspects, connected with the rights of property guaranteed by the state, it will be correctly claimed that such a pronouncement was· not within the principle of stare decisis.  It is to be noted that the point announced is now being reconsidered by legists and by economists of the greatest distinction.

The question whether inheritance is an inherent right, or a grant from public society, has been already considered by such great jurists as Theophilus, Cicero, Grotius, Vinnius, Cujas, Puffendorf, Bynekerschoek, Leibnitz, Doneau, Lord Mansfield, Montesquieu, Merlin, Toullier, Proudhon, and other equally great jurists and philosophers of all times and places, and the best thought of the world at the present time is generally conceded to be expressed by the conclusion that the right to dispose of property after death is a natural and inherent right of mankind, which cannot be taken away by the state.  It is said by one of the greatest of the world's jurists, Troplong, that no country is entitled to be regarded as free where a right to dispose of property by will does not exist.  In France, the very question was 100 years since a pressing political question, and the literature of the discussion is exhaustive, engrossing, and competent.  It was solemnly determined in France in favor of the natural right of an owner to dispose of property by will.  It was in point of fact held to be independent of the state.  By the Italian jurists, "property is held to be freedom itself," and the German jurist Gareis states that the modern effort to restrict inheritance by will endangers property and the very civilization attained by means of the law of inheritance.  But the point for us here is that the implied testamentary doctrine, announced so distinctly in Matter of Delano, is fundamentally opposed to the doctrine announced by Judge Gould in Delafield v. Parish.  One case necessarily makes the legal presumption of law favor the will; the other is a presumption necessarily adverse to the will itself.

With this very general reference to its importance and implications, we may now approach nearer to the consideration of the application of the legal doctrine of burden of proof in testamentary causes.  At common law the burden of proving sanity by preponderating proofs rests always and finally on the proponent of a will.  The result of all

the various adjudications in England on this particular point of profound importance is accurately summed up by a late writer (Mortimer, Probate Law, 59, 60) as follows:

"A person who propounds a will undertakes to satisfy the court of probate that the testator who makes it was of sound and disposing mind [citing Lord Brougham, in Waring v. Waring (1848) 6 Moo. P. C. 355; Smee v. Luce (1879) 5 P. D. at page 91]. And if the party opposing the will gives some evidence of incompetency, but not sufficient to disturb the belief of the court in the sanity of the testator, the presumption in favor of competency will prevail. It has therefore been said that the burden of proof lies upon the party who undertakes upon the ground of insanity to defeat the will, and that if derangement be alleged it is incumbent on the party alleging it to prove such derangement. But when the whole case is before the court on evidence given on both sides, the decree of the court must be against the validity of the will unless the evidence on the whole is sufficient to establish affirmatively that the testator was of sound mind when he executed it [citing Sir Cresswell Cress Will, in Symes v. Green (1859) 1 S. & T. 402; Sutton v. Sutton (1857) 3 C. B. (N. S.) at page 98; Sir J. P. Wilde, in Smith v. Tebbitt (1867) 1 P. & D. 436; Keays v. McDonnell (1872) Ir. R. 6 Eq. 611]."

This statement correctly gives the common law doctrine, which places onus probandi, in the primary sense of that term, always on the proponent of the will. See s. p., Lobdell v. Village of Northville, 151 App. Div. 385, 386, 136 N. Y. Supp. 113.

In the commonwealth of Massachusetts the rule of the common law holds, and the burden of proof is on the proponent of a will to prove sanity by preponderating proofs. Crowninshield v. Crowninshield, 2 Gray (Mass.) 524. The early Massachusetts case of Brooks v. Barrett, 7 Pick. 94, to the contrary, relied on by Greenleaf, in his work on Evidence, and criticised in England in Sutton v. Sadler, 3 C. B. (N. S.) 87 (1857), was soon repudiated in Crowninshield v. Crowninshield. Thus the Massachusetts rule was made to conform with the common law and with probate law generally. That the doctrine of the common law is in the end more in favor of the testamentary power than its opposite there can be no question; for the common law is at once most consistent, as I shall show, with both the abstract principles of justice and the rights of the state at large. At a time when the power of posthumous disposition is under serious discussion in the modern world, it is most important to the upholders of that power that there should be a just and considerate judicial application of the power itself. Otherwise the continued existence of a testamentary power, however just, is needlessly endangered. When the burden of ultimate proof on any issue in a probate cause rests on the proponent, a doubt raised by the proof is by the common law to be resolved against the will.

There is said to be a different rule from the common law in this probate jurisdiction on burden of proof. The main question here is whether it is so firmly and largely established that it is binding and conclusive at present on the surrogate and must be followed in this cause. It will facilitate the investigation of this particular point if we briefly survey the history of testamentary law in New York. Prior to the adoption of the first Constitution of this state in 1777, the probate business was mainly what is called in the old New York reports "common form," business, conducted in conformity with the law and

practice of the old ecclesiastical courts of England. Bogardus v. Clarke, 1 Edw. Ch. 266, 267; Isham v. Gibbons, 1 Bradf. Sur. 76, 78. Prior to the second Constitution, litigations under the statute of wills were mainly confined to devises and the common law courts. The various Constitutions of the state expressly continued the part of the common law relating to wills in force in New York prior to the present form of government. There was no reservation in this particular. Betts v. Jackson, 6 Wend. 183, 202; Tyler v. Gardiner, 35 N. Y. 583.

But, as matter of fact, there was in New York no contentious probate business of importance or serious invocation of probate law of much account, except in this court, prior to the Civil War in the year 1861. It is astonishing how elementary and inconclusive the application of the rich material of probate law was in this state until a late period in the nineteenth century. Prior to that time the economic and social conditions had not been such as to require any extensive and refined application of probate law. The material was at hand and the Constitution made it applicable, but the necessity for its application did not often arise. The probate law of this state long remained a law only in posse.

Prior to the leading case of Delafield v. Parish, in 1862, there had been in New York but one case of any great importance in this branch of the law. Stewart v. Lispenard, in 1841 (26 Wend. 255), is entitled to be regarded as the single exception. It was not until after the Constitution of 1846 that any considerable recourse to the testamentary law established in this state became essential to a proper and complete judicial administration. Jauncey v. Thorne, 2 Barb. Ch. 40, 45 Am. Dec. 424, occurred after the Constitution of 1846, and, though an important case, decided no principle. The same is true of the case of John Tonnele's Will, in 1847 (5 N. Y. Leg. Obs., 254). Surrogate Bradford's judgments between 1846 and 1857, notable as they are in the testamentary law of this state and country, were mainly confined to the modifications made by the new Revised Statutes of the state in the fundamentals of the old testamentary common law theoretically and constitutionally in force here. That he placed his decisions on very wise and admirable grounds ought not to be denied to him.

It is to be noticed with care that just prior to the case of Delafield v. Parish, in the year 1862, the Supreme Court of this state, with the great deliberation usual in that tribunal, delivered an opinion which stated the existing law in probate causes with precision. Lake v. Ranney, 33 Barb. 49, 69. It was there laid down:

"That in every case the onus probandi lies on a party propounding a will, and he must satisfy the conscience of the court that the instrument so propounded is the last will of a free and capable testator."

The leading case in England on that point (Barry v. Butlin, 2 Moo. P. C. 481) was expressly approved. Thus stood the law of this state immediately prior to Delafield v. Parish. That such law was then consistent with the common law relating to testamentary dispositions is shown by resort to a primitive treatise on our common law of Evidence, published in 1842. 1 Greenleaf, Ev. § 77.

It was not until the year 1862 that the general principle of the tes-

tamentary law of New York received any profound or extensive consideration at the hands of the highest courts of the state. Surrogate Bradford, in this court, had meanwhile given the foundation of that law a consideration at once profound and unusual, but necessary to the growing needs of the state. In Delafield v. Parish, 25 N. Y. 9 (s. c. 1 Redf. Sur. 130), Judge Davies, who wrote the prevailing opinion, gave in his adherence to the general rule of testamentary law that the burden of proof in a probate cause rests always on proponent. But, as Chief Judge Selden said, the point was not in the case. Judge Davies said:

"We are next to consider upon whom the law casts the burden of establishing the will of a deceased person."

The cases were reviewed, and it was then stated by Judge Davies that in all cases "onus probandi is imposed on the party propounding the will." This, it will be observed, was in strict conformity with the common law and the prior law of this state. Judge Davies quoted with approval the opinion of Baron Parke in Baker v. Butt, 2 Moo. P. C. —:

"No rule has been acted upon in the court below which has not been long observed, not only in the ecclesiastical courts, but those of common law. For if the party upon whom the burden of proof of any fact lies, either upon his own case, where there is no conflicting testimony, or upon the balance of evidence, fails to satisfy the tribunal of the truth of the proposition which he has to maintain, he must fail in his suit; and in a court of probate, where the onus probandi most undoubtedly lies upon the party propounding the will, if the conscience of the judge, upon a careful and accurate consideration of all the evidence upon both sides, is not judicially satisfied that the paper in question does contain the last will and testament of the deceased, the court is bound to pronounce its opinion that the will is not entitled to probate."

Unless this doctrine of the common law continues in force in this state, every presumption is now for the will after factum prima facie is once established. No matter that the proofs are in equilibrium and grave suspicion is excited in the mind of the probate judge; no matter how inconclusive factum is made out, as, for instance, where attesting witnesses are dead, but the will contains an attesting clause; no matter how grave the suspicion may be on the whole case—if the presumption is for the will, it must go to probate. There is no such peculiar sanctity about a will that it should prevail by presumption in such a case; and so declared that supremely wise system, the common law. The natural order of distribution of the estate of the dead is on the basis of that equality and kinship prescribed by the law in case of intestacy. Historically the will is a usurpation of the rights of the family. The common law for that reason casts the ultimate burden of proof on the proponent in a testamentary cause, or, in other words, presumed against and not in favor of the will. No good will need ever fail under that rule, the supreme merit of which was to insure defeat of every bad and imperfect exercise of the testamentary power. But to recur to the decisions of the great court of this state on the point of burden of proof.

Chief Judge Selden, in his valuable dissenting opinion in Delafield v. Parish, distinctly refused to pass upon the question of the burden of

proof in a probate cause where a plea of non compos mentis was interposed. 25 N. Y. 119, 1 Redf. Sur. page 201. He said distinctly that the question was not involved in the appeal. With profound respect, I beg to say that in this I think he was right, as evidently did Mr. Surrogate Rollins in his opinion in Cooper v. Benedict, 3 Dem. Sur. 136. For more than 30 years after the final judgment in Delafield v. Parish, I am able to find in the reports no decision of the Court of Appeals which expressly mentions Delafield v. Parish as an authority for the point to which it is sometimes cited, viz., that the burden of proof in a probate cause on a plea of insanity rests on contestants. In Rollwagen v. Rollwagen, 63 N. Y. 517, it is said:

"A party who offers an instrument for probate as a will must show satisfactorily that it is the will of the alleged testator, and upon this question he has burden of proof."

As there is no other question in any probate cause, this opinion would seem to negative the construction placed on Delafield v. Parish. But by some extraordinary perversion of the doctrine of stare decisis, the dictum of Judge Gould to the contrary, in his dissenting opinion in Delafield v. Parish, has been often treated as the law of the case. Ean v. Snyder, 46 Barb. 230, 232; Harper v. Harper, 1 Thomp. & C. 351, 355; Matter of Blaine, 143 App. Div. 687, 689, 128 N. Y. Supp. 186; Potter v. McAlpine, 3 Dem. Sur. 108, 115; Miller v. White, 5 Redf. Sur. 320.

In no great case on record is it more difficult to extract a principle of decision than Delafield v. Parish. See note, 5 Redf. Sur. 321. It is impossible to read the dissenting opinion of Chief Judge Selden, or that of Surrogate Bradford below, without concluding that on the issue of sanity or testamentary capacity the proofs were at least in equilibrium, yet the final judgment was against the disputed parts of the will. The actual result was therefore in favor of the common-law doctrine that in testamentary causes the onus probandi is on proponent, for proponent failed. Beyond the final judgment the doctrine of stare decisis does not ever go. In the dissenting opinion of Judge Gould there is, however, a plain statement that on an issue of sanity, where the proofs are evenly balanced, the presumption must be for the will. The majority of the judges concurred only in specific propositions of Gould, J., and they restated these propositions for themselves. They say:

"At common law and under our statutes the legal presumption is that every man is compos mentis, and the burden of proof that he is non compos mentis rests· on the party who alleges that an unnatural condition of mind existed in the testator. He who sets up the fact that the testator was non compos mentis must prove it."

It will be observed that the majority fail to concur in the statement of Judge Gould that where the proofs are in equilibrium the judgment must be for the will. They fail, also, to define the sense in which the term "burden of proof" is employed by them in their proposition. If we test their meaning by the result of the judgment actually reached by them, they must have employed the term "burden of proof" in the sense of "a going forward with the proofs in the first instance," for

the actual judgment was that the proofs in Delafield v. Parish were in equilibrium, and yet the proponents failed.

Judged by every test of logic or law, the minority dictum of Gould, J., that the presumption in such a case was to be in favor of the will, did not, therefore, express any result or principle of law binding in future cases under the doctrine of stare decisis. Suffell v. Bank of England, 9 Q. B. D. 555, 560; Osborne v. Rowlett, 13 Ch. D. 774, 785. Judge Gould placed his doctrine, it will be observed, on two propositions, that sanity is not the negative of insanity and the particular language of the existing statute of wills. Chief Judge Selden, in his dissenting opinion, controverted the first point, which is, besides, contrary to testamentary common law and obviously unsound on its face. Nor was the statute of wills then different, as Judge Gould assumed that it was, from the old statute in any essential point. Robins v. Coryell, 27 Barb. 556.

When Delafield v. Parish was in this court Mr. O'Conor, counsel for contestant, advanced distinctly the point that by the common law the onus probandi in probate causes was always on the proponent. That leading counsel was justly celebrated among his contemporaries for never advancing an ill-founded legal proposition. That was the secret of his professional eminence. As Surrogate Bradford failed to notice, in his opinion, the point advanced by Mr. O'Conor, it must have been, as Chief Judge Selden afterwards said, quite outside of the case. The case in reality turned upon a single question of fact, and of all great cases on record it is the most barren of principle.

[10] Under the common-law doctrine of stare decisis no amount of mere repetition of a rule not distinctly laid down serves to give additional force to such pseudo rule. In matters of this kind the common-law maxim "communis error facit jus" has no application. Lord Denman disposed of that proposition in O'Connell v. Reg., Leahy, 28: "No misconception destroys the law." While decisions of all superior courts are at common law binding on inferior courts, they are never so binding when such decisions are referable to a hypothetical rule of a yet superior Court of Appeal, which has in fact laid down no such rule. An inferior court cannot under such circumstances shift its own responsibilities to apply the law of the land as it is, and not as it is erroneously thought to be. The principle of stare decisis justifies no such indolent expedient or assumption upon the part of a judge of a court of first instance. The life of the common law is discussion and repeated discussion of principles not firmly and completely settled by the court of ulterior resort.

It is also a modification of the doctrine of stare decisis that a principle not continuously acquiesced in by a court of ulterior appeal (which alone determines controverted questions of law) is not res judicata. When a principle is departed from by the same court, it is obvious that it is not a binding rule of law, and to this effect are the common-law decisions. That the statement of Gould, J., in Delafield v. Parish, on the burden of proof in testamentary causes, has not been continuously acquiesced in in the Court of Appeals is apparent from many subsequent adjudications. Take, for example,

the case of Hoyt v. Hoyt, 112 N. Y. 493, 20 N. E. 402, in 1889, 30 years after Delafield v. Parish, affirming Mr. Surrogate Rollins' judgment below in Hoyt v. Jackson, 2 Dem. Sur. 443. Mr. Surrogate Rollins had distinctly said below:

"It has been repeatedly held in this state that in probate controversies the burden of proof rests in general upon the proponents from the beginning to the end of the litigation."

And he accordingly gave the right to begin and close to proponent, for it was a probate proceeding de novo. Unless the burden of proof, as he said so plainly, was in law on proponent, Mr. Surrogate Rollins had no right so to do, as the right to begin and close is a legal, if not a constitutional, right which no court can alter or abridge (Millerd v. Thorn, 56 N. Y. 402; L. O. N. Bank v. Judson, 122 N. Y. 278, 25 N. E. 367; Heilbronn v. Herzog, 165 N. Y. 98, 58 N. E. 759; Conselyea v. Swift, 103 N. Y. 604, 606, 9 N. E. 489; Matter of Hopkins, 97 App. Div. 126, 89 N. Y. Supp. 561), and this holds true in a court of probate, although there is here no jury (Hutley v. Grimstone, 41 L. T. R. [N. S.] 539, 9 Reporter, 224).

In Cooper v. Benedict, 3 Dem. Sur. 136, Mr. Surrogate Rollins had before stated the same general proposition that the burden of proof on the whole case rested on proponent in a testamentary cause. The affirmance of Surrogate Rollins' judgment is as plain an adjudication of the onus probandi in testamentary causes as there is in the books, and the principle affirmed comes within the doctrine of stare decisis relating to variable decisions of an ulterior tribunal. Hoyt v. Jackson virtually restates the common-law rule in force in this state on the subject of burden of proof in probate causes, and it is inconsistent and irreconcilable with the doctrine of Gould, J., in Delafield v. Parish. Thus the common law is reaffirmed on this point. Kingsley v. Blanchard, 66 Barb. 317.

But there is another reason involved in this conclusion, to wit: Public policy is favorable to Mr. Surrogate Rollins' construction of the rule. While there can be no doubt that Judge Gould in Delafield v. Parish was animated by a great desire to protect wills from assault in the existing probate courts of first instance, an assumed distrust on his part of the judicial machinery provided by the state for probate causes is not an authority to a subordinate court to deduce therefrom that the constitutional jurisprudence of a state has been altered by implication, or in order to promote the good intentions of one judge. At a time when the testamentary power is soon to undergo a serious discussion in the crucible of public opinion, no pronouncement in favor of the testamentary power should be deduced from uncertain data, if it is plainly in contravention of the very motive which gave rise to the dictum. Any new presumption in favor of a will is contrary both to the common law and to modern tendency, and serves to protect unduly unjust and spurious wills. Such a course reinforces the argument of that growing body of the electorate who view with disfavor a testamentary power of disposition. It may serve to support a final argument against testamentation, the economic importance

of which to property and the welfare of society has been briefly referred to above.

[11] At common law one who relies on a will in opposition to the title of the heir must allege that it is the will of a person of sound and disposing mind and therefore must prove it. Sutton v. Sadler, 3 C. B. (N. S.) 87. This is a very wise and profound rule of testamentary common law. The consequence of it is that in case of doubt the presumption is against the will. In Tyrrell v. Painton (1894) Probate, 151, 156, it was said:

"Wherever suspicious circumstances exist which excite the suspicion of the court, it is for those who propound the will to remove such suspicion, and it is only when this is done that the onus is thrown on those who oppose the will."

In this court Rollins, S., held the same in Cooper v. Benedict, 3 Dem. Sur. 136. The English discussions last cited are only important to us in so far as they correctly state the testamentary common law once in force in this state. That they do so state it has been already shown by authority. Now if, after mere factum is established prima facie by proponent in a probate cause, the burden of proof is thrust, counter to the common law, on contestant, every presumption is then for the will, while at common law the presumption always practically is against the will and in favor of the heir or next of kin. The rule announced by Gould, J., would be at once unjust to the heir and next of kin and unjust to the state, for a will belongs to public and not to private law. In several cases lately in this court there was strong ground for suspicion of forgery, although not enough to authorize remanding the persons implicated to the public prosecutor. The wills failed, though factum was established and the proofs in equilibrium.

Had the strict rule to all intents substantially announced by Gould, J., been applied in those cases, the wills must have been approved by the surrogate. Subsequent events, however, showed that the judgments were right in both cases, as, although the properties were large, no appeal was taken. There is well-founded reason to believe that the parties themselves came to doubt the genuineness of the wills. There is no need of a presumption in favor of any will. It would have been a wrong to the public law of this state had a presumption compelled the probate of wills of such uncertain authenticity. An infinitesimal proportion of wills fail to go to probate, and where there is a strong case of suspicion of validity, or of testator's competency to will, or his freedom from restraint or unlawful influence, the law regulating intestacy should then prevail as at common law, and not the will. This the common law recognized, and the matter is left to the conscience of the probate judge under well-settled limitations upon the exercise of such discretion.

[12] I do not presume ever to set up my opinion against well-founded authority. But I will not shelter myself in any cause from responsibility by an ill-founded assumption of the verity of cases which are not authority. On this matter I shall follow the judgment of that distinguished surrogate, Mr. Rollins, rendered since Delafield v. Parish, and hold that, when an issue of insanity is interposed in a probate

proceeding, the burden of establishing the testamentary capacity of a testator by a preponderating weight of evidence is ultimately cast on the proponent of a will, as it was by the common law. I will not adjudicate cases on an empty formula, which is not consistent with common law, until I am advised by superior authority that I must do so. In that event the responsibility will not be mine. In this case I will follow what I conceive Mr. Surrogate Rollins laid down as the rule in probate causes, and will hold that, when a plea of insanity is interposed to a petition for probate, the ultimate burden of the whole case rests on the proponent of a will to establish by a preponderating weight of proof the capacity of the testator to the satisfaction of the surrogate, and consequently that, where the proofs are in equilibrium, the proponent has failed to establish the will. Section 2622, C. C. P.; Rollins, S., in Cooper v. Benedict, 3 Dem. Sur. 136. The same conclusion was applied in the Supreme Court and this court by my immediate predecessor. Matter of Flansburgh, 82 Hun, 49, 39 N. Y. Supp. 177; Matter of Widmayer, 34 Misc. Rep. 439, 440, 69 N. Y. Supp. 1014.

[13] That proponent has fully sustained the burden resting on him of making out in this cause the capacity of testatrix the surrogate cannot doubt. If it happen that the rule as to burden of proof is the other way, the respondent cannot complain of my ruling in this cause, for it is in his favor. It appears from the evidence that the testatrix was an elderly widow of no great estate, living alone in a secluded rural town in New Jersey. She had no children living when she made her will. The contestant alleges that he is a grandson of testatrix. Certainly testatrix seldom or rarely saw him, or in any event their intercourse was most distant and slight. The case was not so fully presented for proponent as I could have wished; but I gather from the evidence, such as it is, that there was an estrangement between contestant and testatrix, even if the contestant's relationship was conceded by testatrix. The evidence tending to prove dementia of testatrix, or her want of testamentary capacity, was, in the main, most trifling and insignificant. Had it not been for the testimony of the medical attendant of testatrix, the case made on the part of contestant would be entitled to no attention whatever from the surrogate.

[14] The trifling character of the lay evidence adduced by the contestant was made most apparent in the course of the examination of the first witness called by contestant. She was the wife of a former tenant farmer of the husband of testatrix. This witness testified to very remote and most inconsequential and trifling facts which she did not hesitate, under the peculiar rule of evidence in force in this state, to characterize as irrational in her opinion. Formerly a lay witness could have testified in this court directly that testatrix was, in the opinion of witness, mad or crazy (the old probate books are full of such instances), leaving the facts to be brought out on cross-examination. Lay witnesses never appreciate the force of the modern rule. By either rule of evidence the testimony of lay witnesses was and is not of great value, unless the witness is intelligent and has a very correct conception of mental disorders, or the act or conduct testified

to is irrational per se. Evans v. Knight, 1 Addams, 229, 2 Ecc. Rep., 229; In re Campbell's Will (Sur.) 136 N. Y. Supp. 1086, 1098.

It is evident to the surrogate that the first lay witness, the farmer's wife, called by contestant, did not approve of the manners of testatrix, or of her way of hanging her pictures, which this witness states was crooked or on a slant. But her conclusion that such conduct or acts were irrational is of small value as evidence. Several other country neighbors of testatrix testified to other remote and equally inconsequential acts or conduct of testatrix, which, in due accord with the existing rule of evidence, they also proceeded to characterize as irrational on the invitation of counsel. But their opinions on this point cannot, from the character of their other evidence, be entitled to much weight in this court on so grave an issue as legal capacity to make a will. Were it not for the testimony of the attending physician, called by contestant, I should not have given long consideration to the contestant's evidence. This medical practitioner was permitted to testify almost without objection. But for this the surrogate is not responsible.

[15] On the question of factum of will and compliance with the statute of wills, I take it that even in a contested probate proceeding the surrogate himself is bound by law to see to it, in the first instance, that the rules of evidence are strictly applied and that the will is duly proved. In this particular the duties of the surrogate are peculiar. But after the prima facie proof of the will, and in the subsequent course of the trial of the issues of fact in a contested probate proceeding, the evidence, as in other civil causes, is taken by and at the risk of the parties, and objections to it may be waived by them unless duly taken.

[16] On the trial of issues, other than the factum of will in the first instance, the surrogate sits judicially, and his functions, powers, and duties are much those of other trial judges. Matter of Meyer, 72 Misc. Rep. 566, 569, 131 N. Y. Supp. 27. The surrogate ought not, in my judgment, to interfere too much with the conduct of the trial of a contested probate, first by assisting or restraining one side, and then the other. The surrogate's duties, after factum of will once established, pursuant to the statute of wills, become passive rather than active. His judicial conduct ought then to conform to the rules of orderly judicial procedure in other tribunals of the state.

[17] In the course of contestant's proofs, the medical practitioner in the rural community in which testatrix lived was permitted to give some sweeping legal conclusions, without any objection taken by proponent's counsel, who, however, admitted that he was slightly deaf. The physician was allowed to testify to testatrix's competency to do particular acts without objection, contrary to the rule of law (In re Schmidt's Will [Sur.] 139 N. Y. Supp. 473), and finally that testatrix at the time of making her will was afflicted with progressive senile dementia with paranoiac tendency. But it appeared that from 1898 down to her death the doctor treated her first for pneumonia only, and on a subsequent occasion for cancer, of which dire disease she died, some seven years after her will was executed. There was no

evidence that this doctor or any other ever treated the testatrix for a mental disorder. This witness began to practice only in 1898, so that testatrix must have been among his earliest patients. There was not much cross-examination of this witness, and no other expert was called on behalf of proponent, or assisted in the taking of the medical evidence given in on the part of contestant.

[18] The surrogate must take judicial notice that the technical phrase of this physician, "senile dementia with paranoiac tendency," means nothing more than mens insana with a tendency to mens insana, or, in other words, unexplained it means old-age insanity with a tendency to insanity. Medicine has been said by the Court of Appeals to be not an exact science. Griswold v. N. Y. C. & H. R. R. R., 115 N. Y. 64, 21 N. E. 726, 12 Am. St. Rep. 775.

[19] But however this may be, as I have stated before in my judgments. in this court, diagnoses and opinions of experts are in any event always controlled by facts. Opinions never control or outweigh contradictory facts established by direct evidence in the cause. Seaman's Friend Soc'y v. Hopper, 33 N. Y. at page 641; In re Schmidt's Will (Sur.) 139 N. Y. Supp. 474; Miller v. Miller, 150 App. Div. 611, 135 N. Y. Supp. 773.

It is not because this physician practiced his profession in the country that his evidence is of small value. The surrogate entertains a profound respect for many professional men whose sphere of activities lies in the serener and often profounder and more wholesome life of the country. Such a life lends itself more readily to study and scientific research of an inductive character, and some of our ablest lawyers and physicians live remote from great towns. But in this instance the evidence in the cause does not tally with the rural doctor's conclusions. In fact, it contradicts them. This testatrix was proven to have managed her own affairs shrewdly, and her people of business (many of them wholly disinterested) testified to her accountability and rational conduct throughout her long life and down to the moment of her death. The particular testimony on this point, given in by one young woman, who took the daily orders of testatrix for groceries, and who stood, also, on a footing of intimate friendship with testatrix in their village life, impressed me greatly by its superior intelligence and candor. So the testimony of the sick nurse of testatrix, who was with testatrix for several years and a friend, was much in favor of the mental capacity of testatrix. It is true that this friendly nurse was not a scientific or trained nurse; but she had experience with the common facts of life, and obviously she had failed to detect any evidence of "senile dementia with paranoiac tendencies."

[20] The best proof of insanity, to my mind, is a demonstrated failure of the person whose capacity is at issue to react to the common facts and events of life. When it is established that a person reacts to the common facts and intercourse of life; when it is established that he has gone through life in sole control of his own affairs respectably, orderly, and decently in fact; when he is conceded to have been sui juris throughout a long life, visiting and receiving his friends, and pursuing his daily vocations and avocations unquestioned

by his family or the county authorities—to my mind this° court of probate should long hesitate after his death to affix the stigma of insanity or testamentary incapacity on such a life. Such persons, having been proven to react to the common facts and experiences of life, are in law entitled to be presumed sane in a court of probate.

The proof in respect to this testatrix responded to my definition of sanity. In view of that evidence, should this testatrix be adjudged incompetent to make a final disposition of her estate? I think not. The surrogate should never be astute to find evidence of insanity or testamentary incapacity, although where the proofs are obviously in equilibrium he may doubtless refuse probate in a proper case, when the question of sanity is left in doubt.

[21] But one other question remains to consider: The will was attested by two respectable and disinterested witnesses, who gave their testimony in this proceeding. The testimony of these witnesses stands unimpeached, and it proves the execution of the will fully and sufficiently. But it appears that one of the beneficiaries may have superintended the execution of the will and that he took a benefit under the will, and it is consequently asserted that the burden of proof is therefore on the proponent to establish the testamentary act with greater particularity than would be required in a case where the will is executed under wholly disinterested circumstances. No doubt this is generally true as a proposition of law. I have often had occasion so to hold in this court. In re Falabella's Will (Sur.) 139 N. Y. Supp. page 1011; In re Benjamin's Will (Sur.) 136 N. Y. Supp. page 1085; In re Campbell's Will (Sur.) 136 N. Y. Supp. page 1102. And see Anson on Contracts (Ed. of 1895) page 222; Matter of Mondorf, 110 N. Y. 456, 18 N. E. 256; Coffin v. Coffin, 23 N. Y. 9, 80 Am. Dec. 235; Post v. Mason, 91 N. Y. 539, 545, 43 Am. Rep. 689.

It happens in this case that the beneficiary in whose office the will was executed had long been the friend and man of business of testatrix, managing her estate and paying over her income to her on her own receipt. She naturally turned to him when she made her will. The legacy to him was not large, under the circumstances disclosed in the case. In any event, the additional burden cast on proponent by reason thereof has been sufficiently discharged in the cause, and I have no hesitation in pronouncing for the will.

The probate sought must be granted. Settle decree accordingly.